## Gherardi v. Geroulo.

*Pleading—Statement of claim—Averment of agency—Affidavit of defense —Denial—Sufficiency.*

1. Where the statement of claim alleges that defendant's automobile was operated by the employee or agent of defendant, acting within the scope of his employment and engaged in defendant's business, an affidavit of defense which avers that defendant has no knowledge of who was operating the car and denies that it was being used by the employee or agent of defendant, or any other person acting within the scope of his employment, or engaged in defendant's business, and that defendant is informed and believes that the car had been taken without his knowledge, is a sufficient denial of the allegation of agency in the statement of claim.

*Negligence—Automobile—Liability of owner—Car driven by son without permission—Agency.*

2. Where a father maintains an automobile for the pleasure and convenience of his family, its use by a minor son to take friends of his for a ride, without the consent or knowledge of the father, does not make the father liable for injuries resulting from the negligent operation of the car.

3. An agency is not implied solely from the fact that a car owned by the father is being driven by his son.

Trespass for personal injuries. Rule for new trial. C. P. Lackawanna Co., Oct. T., 1925, No. 756.

J. J. *Walsh* and L. H. *Simons,* for plaintiff; G. W. *Ellis,* for defendant.

MAXEY, J., April 20, 1927.—About 10 A. M., May 17, 1924, Michael Geroulo, then aged about twenty-two years, was married. His father, Vito Geroulo, had a little store on the first floor of his property at Jessup, in Lackawanna County. Vito Geroulo and his family lived in that property and on the third floor was a public hall. The father permitted his bridegroom son the use of that hall for a wedding celebration the remainder of the day. Another son, Joseph Geroulo, was on the date in question in his eighteenth year. On the afternoon of that date he decided to take several of the celebrating guests out for a ride. He proposed to take them in a car owned by his father. He asked his mother for the key of the car and she refused to give it to him. Finally, he took the key without permission (Record, page 48). He drove north about ten miles. On his way home and near his home, about 4.30 P. M., he had a collision with a car belonging to Peter Gherardi, the plaintiff, and driven by him. This collision gave rise to the suit against the defendant, Geroulo, the owner of the car.

The first question arising is whether or not on the record in this case there was sufficient direct or implied evidence of agency on the part of the defendant's son to justify the submission of the case to the jury. We did not think so, and directed a verdict for the defendant.

The plaintiff contends that there was sufficient proof of agency. The evidence he first relies on to prove agency is the evidence from the pleadings. The second paragraph of the plaintiff's statement was offered in evidence. It reads as follows:

"2. At the same time the defendant was the owner and possessor of a certain automobile which was being operated in an easterly direction on the southerly side of said Church Street by the servant, agent, workman or employee of said defendant, who was then and there acting within the scope of his employment and was engaged on defendant's business."

The plaintiff also offered the second paragraph of the affidavit of defense, reading as follows:

Gherardi v. Geroulo.

"2. The allegations set forth in the second paragraph of plaintiff's statement of claim are denied, and for further answer defendant says that he has no knowledge as to who was operating the said car or where it was being operated, but denies that it was being used by his servant, agent, workman or employee, or any other person who was then and there acting within the scope of his employment and was engaged in defendant's business. He is informed, and believes, however, that said car was taken without his knowledge."

The plaintiff in asserting an admission of agency in the pleadings relies chiefly on the case of Buehler v. United States Fashion Plate Co., 269 Pa. 428. It is true that the affidavit of defence in the case at bar was not drawn with quite the verbal completeness outlined by the Supreme Court in the Buehler case. It was drawn substantially in compliance with these requirements, and certainly contained more than "a simple disavowal of knowledge and a formal call for proof," which the Buehler case says is insufficient. It is true that the defendant denies knowledge as to who was operating the car, but it is also true that he "denies that it was being used by his servant, agent, workman or employee, or any other person who was then and there acting within the scope of his employment and was engaged in defendant's business." He also avers his belief that the car was taken without his knowledge.

The affidavit of defense, therefore, left the plaintiff in no doubt as to what the exact issue between him and the defendant was, to wit, the presence or absence of agency in the driver of the offending automobile. We think the affidavit of defense contains a sufficiently specific denial of the allegations of fact of the plaintiff's statement to conform to the Practice Act and to prevent the averments of the plaintiff's statement from being taken as admitted.

In Myers and Myers v. Pfeiffer, 84 Pa. Superior Ct. 505, also cited by the plaintiff, there was no affidavit of defense filed, and, therefore, of course, the uncontroverted averment of defendant's ownership of the car and its operation by his agent had to be taken as admitted when the pleadings were offered in evidence: Sections 6 and 13, Practice Act of May 14, 1915, P. L. 483.

Plaintiff seems to think that his case is strengthened by the fact that when defendant objected to the offer of the pleadings, the court said: "For the present, I will overrule the objection. Exception noted for the defendant."

We reserved our ruling not because we were in doubt what the proper ruling should be, but because we wished to give the plaintiff an opportunity to submit authorities in support of the contention that he so urgently advanced, and we thought it easier to strike this evidence out later if our view of its admissibility remained unchanged than to exclude it in the first instance, and, in the event of our later being convinced that its rejection was error, to put plaintiff to the necessity of renewing his offer. We can find no merit in plaintiff's contention that because we overruled defendant's objection "for the present," and inadvertently failed to strike out the evidence later, that, therefore, these pleadings proved what plaintiff claimed they proved. If the pleadings were admitted and did not support the legal purpose for which they were offered, the mere admission of the pleadings in evidence was without effect. The probative value of irrelevant evidence is not increased merely by its inadvertent or improper admission into the record.

With this alleged evidence of agency eliminated, what other evidence of agency is there in the record? We have above referred to the son's testimony that he took the car in defiance of his mother's orders. The defendant, Vito Geroulo, was called as for cross-examination by the plaintiff, and his testimony was as follows (Record, page 3):

Gherardi *v.* Geroulo.

"Q. You have a son by the name of Joseph Geroulo? A. Yes, sir. Q. How old was he on the date of the accident? A. About eighteen years old. Q. He lived with you? A. Yes, sir. Q. He helps you in your business? A. He works for his brothers, Geroulo Brothers. . . . Q. Joe contributes to your support, does he? A. He pays board to his mother. . . . Q. As to the date of the accident, was he paying? A. He was paying board then for about a year before that. . . . Q. You were at home all day that day? A. I was home, down in the basement. I have a little business; I run a little store, and I was there in the afternoon, taking care of my cigars and candy and stuff. Q. You used that car for your own convenience and pleasure and also for your family, did you not? A. I used my car any time I want to go out, me and my family; I will go out with them, and I hire my son to drive the car for me; I don't know how to run it myself. . . . Q. How many of your boys were residing at your house at the time of this wedding? A. There was four there present. . . . Q. And you permit those boys to use the car for pleasure purposes occasionally? A. They have got to ask me for it. If I see fit, I let them have it; if I don't, I won't. Q. When they ask you for the use of the car, you permit them to have it? A. Sometimes. Q. And sometimes not? A. Sometimes not."

The following is a part of the examination of Geroulo by his own counsel (Record, page 6):

"Q. Did you have anything to do with the arrangements for the wedding? A. No, sir. Q. Absolutely nothing? A. Just to permit him to use my hall and kitchen; that is all. Q. Did you know that your son, Joe, was using your car that afternoon? A. No, sir. Q. Did your son, Joe, ask you for permission to use your car that afternoon? A. No, sir. Q. Did anybody ask you for permission to use your car that afternoon? A. No, sir. Q. Did you know that it was out on the streets? A. I did not. Q. When did you first learn that your car was being used that afternoon? A. Right after the accident happened. Q. How were you informed? A. It was two or three blocks away from my home where this accident happened; the children ran down there, and when they saw it was my car they ran up and told me and my wife. Q. Your son, Joseph, had a car of his own at that time, had he not? A. Yes, sir. Q. Was it a small car or a large car? A. A Ford car. Q. Your son owned that car, did he not? A. That Ford, yes. Q. And he had a driver's license for it? A. Yes, sir."

Geroulo was later examined by his own counsel as follows:

"Q. The wedding which took place at your hall on May 17, 1924, was that under your direction or under your son's? A. I had nothing to do with the wedding party; my son just asked me about a week before that if he could use the hall and the kitchen and the dining-room, and I told him, yes, he could have it, but all arrangements he done it all. Q. Who brought the people to the house; did your son take care of that or you? A. He invited them all. Q. And they all came themselves? A. Yes, sir. Q. And you didn't give your son instructions to take any guests home from the wedding? A. No, sir. Q. Did you give consent to your son, Joe, taking the car? A. No, sir; he never came and asked me. Q. Did you know he had your car on that day? A. No, sir."

The above constitutes all the evidence on the question of agency. In the face of this evidence, plaintiff contends that the question of agency was one for the jury. We are familiar with the rule that it is ordinarily for the jury to say if a driver was acting within the scope of his authority: Raub *v.* Donn, 254 Pa. 203. But we do not interpret this rule as meaning that in every case

Gherardi v. Geroulo.

where injury results from the negligent operation of a car by a person not the owner, the question of agency must be submitted to the jury, not only in the absence of evidence tending to prove the agency, but in the face of evidence proving exactly the contrary. We are also familiar with the rule that the evidence of agency may be specific or implied, but we know of no authority in Pennsylvania sustaining the proposition that agency may be implied solely from the fact of the relationship of a car-owning father and a car-operating son.

Plaintiff relies chiefly on the case of Crouse et al. v. Lubin, 260 Pa. 329. That case is easily distinguishable from the case at bar. In that case the defendant, as the Supreme Court found, kept the car "for the use and pleasure of her husband and mother, Mrs. Abram; especially for the latter, who was authorized to use it whenever she desired, without limit. Defendant had no regular chauffeur for this car, but it was kept at convenient garages and sometimes at the garage of the Lubin Manufacturing Company, of which her husband was the president. It was there on the day above mentioned, and, in response to the request of defendant's mother, the foreman of that garage sent her the car, as he had done on previous occasions, in charge of one George B. Day as chauffeur. The accident happened while the car was being returned to the garage. Mr. Day was an employee of said company. . . . The accident happened on Sunday, and the only service he performed that day was as chauffeur of this car. While doing that, he was subject to the direction and control of defendant's mother and not of the company. . . . Defendant offered no evidence and there was no controversy as to the facts on this branch of the case. . . . Defendant made it her business to furnish a car for the comfort and pleasure of her mother, and a chauffeur was necessary in order to obtain the benefit thus conferred. . . . In employing Mr. Day as a chauffeur, the mother was acting within the scope of her authority and in reality representing the daughter."

In that case, therefore, there was no dispute that the car in question was used, first, with the express authority of the defendant, and, secondly, in the pursuit of the defendant's business, which was (so far as it concerned that car) the furtherance of the pleasure of her mother.

The case of Raub v. Donn, 254 Pa. 203, cited by plaintiff's counsel, is also easily distinguishable from the case at bar. The facts appear in the opinion of the Supreme Court as follows, page 204:

"The defendant told a Mr. Maher, an automobile mechanic, that he was going away for a short time and 'wanted the car looked over and repaired before he came back;' on the evening of the accident, this man went to the defendant's garage and made some repairs, after which, accompanied by the latter's son, Samuel, he took the car out on a testing tour, during which he made other adjustments; . . . finally, after determining that the machine was in proper condition, Mr. Maher turned it over to Samuel and 'told him to take the car back to the barn' or garage from which it had come; the latter pursued a direct route home, and the accident happened on the way; among other pursuits, the defendant conducted a livery stable and undertaking business, and Samuel was in his employ; this son was in the habit of operating his father's car and was frequently seen driving it. . . .

"In overruling the defendant's motion for judgment n. o. v., the court below correctly said:

" 'There is not a particle of evidence that Samuel was using the car at the time of the accident for his own pleasure or convenience; all the testimony, including his own, is that he was returning it to his father's garage after

Gherardi v. Geroulo.

Maher had turned it over to him at a point distant not half a mile from the garage; he was on his father's business just as much as if he had been driving his horse from the blacksmith shop after being shod; he was on the direct route home; he says that his sole purpose was to get the machine back to the garage, . . . and there is no intimation of anything to the contrary in the evidence.' "

In other words, in that case the driver of the car was on his father's business. There was sufficient evidence of authority, partly implied and partly proven by direct evidence, that the son had the father's general consent to drive his car.

The case of Smith et ux. v. Jamison, 89 Pa. Superior Ct. 99, cited by plaintiff's counsel, is also distinguishable from the case at bar. The facts in that case were found by the court as follows:

"The testimony shows beyond question that the car was owned by the husband, D. Ray Jamison, and had been purchased and was used for the joint convenience and pleasure of Mrs. Jamison and himself, and that Mrs. Jamison drove it frequently. The license was issued to them jointly. With respect to the use of the car, D. Ray Jamison testified: 'Q. That car was used jointly by yourself and wife? A. Yes. Q. Any time she wanted to take it, she had authority to take it? A. Yes.' . . . Mrs. Jamison frequently used the car while shopping and in the performance of household errands."

The Superior Court held that the court below properly charged the jury in stating that "if the accident was the result of negligence upon the part of his wife in parking that car, D. Ray Jamison would be responsible. The law is that when a person purchases an automobile for the convenience, for the benefit, for the pleasure of his wife or family, that he is responsible."

It is true that some of the language used by the court below, if separated from its context, would tend to support the theory of the plaintiff in the case at bar. This language is as follows:

"Hence, one who keeps an automobile for the pleasure and convenience of himself and family is liable for injuries caused by the negligent operation of a machine while it is being used for the pleasure and convenience of a member of his family."

This sentence, standing alone, is not in harmony with the opinion of the appellate courts of Pennsylvania. But that the court below did not intend this statement to have the wide application that plaintiff at bar gives it is indicated by the sentences which follow it:

"His liability results from the fact that this car was being used for the purpose he had authorized, and he is *prima facie* responsible for its management when in the ordinary use for that purpose. The possession of the car by the wife at the time of the accident in question was the possession of the husband; therefore, that makes the husband alone responsible in this case."

In the case at bar, the car was not being used for the purpose that the defendant authorized. Its possession by his son was not in any sense the possession of the father, the defendant.

We think the following cases sustain our conclusion that there was not in the record of the case at bar sufficient evidence to warrant the submission of the question of agency to the jury.

In Laubach et al. v. Colley, 283 Pa. 366, 369, the Supreme Court said: "A distinction has been drawn between cars employed for business and pleasure purposes. In the case of the former, the operation is presumed to be in the master's service, and the burden rests on him to show the contrary to be

true. . . . Where, however, we deal with vehicles used for family needs, a different rule is applied, and it must ordinarily appear, before a recovery may be had, that the person using the motor was engaged on the owner's work, whether he be a chauffeur . . . or a member of the defendant's household. . . ."

Markle v. Perot, 273 Pa. 4. In that case the plaintiff appealed from the refusal of the court below to take off a non-suit, the reason for its entry being that he had sued the wrong person. The Supreme Court said: "Defendant was the owner of an automobile which, while being driven by his adult son, injured the plaintiff. The reason urged by appellant for fixing liability on the father for his son's alleged negligence is that the latter was a member of the former's household, and that the automobile was used at times for the pleasure, comfort and convenience of the family. It is not pretended that, at the time of the accident, the son was engaged on any business of the father, nor is it disputed that he was driving the automobile on a mission of his own—to attend a meeting of a fraternal organization of which he was a member—after obtaining permission from his father to so use it."

The Supreme Court said, page 5:

"The liability of the owner of a motor-vehicle for the tortious act of a driver of his car, which causes injury to a third person, rests either on the relation of master and servant or of principal and agent between the owner and the driver. Speaking of a state of facts very similar to those we are now considering, the Superior Court, in Kunkle v. Thompson, 67 Pa. Superior Ct. 37, said:

" 'The action is not brought against the son who operated the car, but seeks to charge the absent owner with the consequences of the negligent operation of his car by another. Under such circumstances, there is surely no need to discuss the fundamental principles underlying the long line of decisions—nor even for a citation of the cases—which declare that under such a state of facts the relation of master and servant must be established or the doctrine of *respondeat superior* may not successfully be invoked. This principle has been steadily and continuously asserted by the Supreme Court and this court. . . . The liability, if any, of the defendant cannot rest merely on the ground that he was the father of the person who drove the car. The fact that he was the owner of the car furnishes no foundation for his liability in the case.' There, the son, living with his father, was but nineteen years of age, 'practically manumitted;' here, while he was living with the father, he was twenty-four years old and employed on his own account.

"Nothing was shown which would charge the defendant with responsibility for his son's negligence. The residence of the son with his father, and the circumstance that the automobile may have been used at times for the pleasure, comfort or convenience of the family, are not sufficient to establish liability." To the same effect is Calman et ux. v. Sperry, 276 Pa. 273; Scheel v. Shaw, 60 Pa. Superior Ct. 73.

We believe that in directing a verdict in favor of the defendant in this case we are following the principles laid down in a long line of decisions by the appellate courts of Pennsylvania. We, therefore, must refuse a new trial in this case.

After a review of the record, we are also convinced that the direction of a verdict in favor of the defendant would also have been justified by the absence of proof of negligence on the part of the driver of the defendant's car. The evidence as to how this collision took place is of vague and indis-

tinct character and would as readily support the conclusion that the collision was as much due to the contributory negligence of the plaintiff as to the negligence of the driver of defendant's car.

*Order.*—Now, to wit, April 20, 1927, the rule for a new trial in this case is discharged.

From William A. Wilcox, Scranton, Pa.