# Scheel, Appellant, *v.* Shaw.

*Negligence—Master and servant—Automobiles—Chauffeur—Scope of employment—Province of court and jury.*

In an action against the owner of an automobile to recover damages for personal injuries resulting from the negligent act of the defendant's chauffeur, it appeared that on the day of the accident the defendant and the chauffeur were out for a ride, and on their return to the defendant's home, when the car was about to be taken back to the garage, the chauffeur, not regularly employed as such, requested the defendant to lend him the car to go for his family some four miles away. Permission was granted, and on the return trip with his family he struck and injured the plaintiff. He did not notice at the time that anything had occurred as it was very dark, but when he was about to put the car in the garage, which was on his premises, he noticed the condition

of one of the headlights from which he judged he had had a collision. He spoke to the defendant about it, and together they returned over the route and finally came to a house where the plaintiff had been taken after she had been struck. The defendant had the plaintiff moved to a hospital and paid her expenses until her recovery. Plaintiff's witnesses testified to declarations made by the defendant in the chauffeur's presence immediately after the accident to the effect that the chauffeur was his employee, that the defendant was the owner of the car, but was not in it at the time of the accident. The defendant did not at the time these statements were made disclaim liability upon the ground that the chauffeur was not acting for him at the time of the accident. *Held,* that the trial court committed no error in giving binding instructions for defendant.

Argued Dec. 10, 1914. Appeal, No. 232, Oct. T., 1914, by plaintiff, from judgment of Municipal Court, May T., 1914, No. 245, on verdict for defendant in case of Johanna Marie Scheel v. Arthur E. Shaw. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before KNOWLES, J.

At the trial it appeared that the plaintiff was struck by defendant's automobile at about half past ten or eleven o'clock on the night of January 4, 1914, when it was very dark. At the time of the accident the defendant was not in the car, but it was being driven by William E. Volz, the defendant's chauffeur. The evidence showed that Volz had charge of the Wellsbach street Lighting Company's automobiles as a chauffeur, and that he also was employed by the defendant who was president of the company to keep his automobile in order, for which work he was compensated in money. When he acted occasionally as chauffeur for the defendant he received no money, but was rewarded by "favors" which he "considered far above money matters." The circumstances of the accident are stated in the opinion and dissenting opinion of the Superior Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Thomas Ridgway*, for appellant.—It is clear from the evidence that whether the automobile was being driven at the time within the scope of the chauffeur's employment is a question for the jury to determine: Lee v. Henry, 50 Pa. Superior Ct. 591; Bowling v. Roberts, 235 Pa. 89; Hazzard v. Carstairs, 244 Pa. 122; Moon v. Matthews, 227 Pa. 488.

*Frank P. Prichard*, with him *James Wilson Bayard*, for appellee.—It is well settled in Pennsylvania, that where a servant without the consent of the master, uses the master's automobile for his own purposes, there can be no recovery against the master: Lotz v. Hanlon, 217 Pa. 339; Sarver v. Mitchell, 35 Pa. Superior Ct. 69; Durham v. Straus, 38 Pa. Superior Ct. 620; Bard v. Yohn, 26 Pa. 482.

OPINION BY KEPHART, J., May 14, 1915:

On the day of the accident the defendant and the chauffeur were out for a ride and on their return to the defendant's home, when the car was about to be taken back to the garage, the chauffeur, not regularly employed as such, requested the defendant to lend him the car to go for his family, some four miles away. The permission having been granted, on the return trip with his family he struck and injured the plaintiff. Not noticing the accident at the time, as it was very dark, he continued his journey to his home and when he was about to put the car in the garage, which was on his premises, his attention was directed to the condition of one of the headlights, from which he judged he had collided with some obstacle on his journey. He spoke to

·the defendant about it and together they returned over the route, stopping at a point at which the chauffeur thought the car had received a jolt. After walking a few squares they came to the house where the plaintiff had been taken, suffering from an injury which she had received from an automobile. It is not contradicted that it was the defendant's automobile that caused the injury. The defendant had the plaintiff moved to the hospital, paying her expenses, etc., until her recovery. Suit having been brought for the negligent use of the car and a nonsuit having been entered in the court below, this appeal is from the refusal of the trial court to take off the nonsuit. Was the lending of the car to the defendant's chauffeur and his journey for his family within the scope of his employment?·

As indicated in Blaker et al. v. Electric Co., ante, p. 56, the test, in cases where the servant uses a car, is the scope of his employment. In that case we said that the chauffeur was not acting within the scope of his employment when he was using the machine for his own pleasure or business, and therefore the owner was not liable for the injury caused by the chauffeur's negligent operation of the machine. In the case at bar the journey was taken by the chauffeur, with the permission of the master, on an errand solely for the benefit of the chauffeur. The fact that permission was given would not alter the rule as to the master's liability. The ownership of the car would not make the master liable: Lotz v. Hanlon, 217 Pa. 339. Where the master lends his servant to another to be engaged in the business of other persons, subject to their directions and control, the servant becomes a servant of the new master though he is paid by the old master: Rourke v. White Moss Colliery Co., L. R. 2 C. P. Div. 205. As an aid in determining whether, in doing a particular act, he is the servant of the master, the general inquiry is: "Was the act done in business of which the master is in control as a proprietor, so that he can at any time stop or continue it, and determine the way in which it

shall be done, not merely in reference to the result reached, but in reference to the method of reaching the result, comprehending not only the general business which the act is intended to promote, but the particular business which calls for the act in the smallest subdivision that can be made of the business in reference to control and proprietorship?" It would not be contended that the lending of the car to a person other than a chauffeur would make that person the servant of the master, and we cannot conceive upon what theory this relationship exists, as the chauffeur is, for the time being, constituted the owner of the car. It has been stated as a general proposition that where the owner of an automobile merely lends or hires it out to another without more, he will not be liable for damages resulting from its use while under the control of the borrower or hirer: 33 L. R. A. (N. S.) 81. Cited in support of this doctrine: Freibaum v. Brady, 143 App. Div. 220; 128 N. Y. Supp. 121; Lewis v. Amorous, 3 Ga. App. 50; 59 S. E. Repr. 338. The leading case on the subject is Doran v. Thomsen, 76 N. J. L. 754, which was an action brought to recover damages for the negligent operation of a motor vehicle which had been borrowed from the owner. The court says: "An owner of a vehicle is not liable for an injury caused by the negligent driving of a borrower, if it was not used at the time in the owner's business." Citing Herlihy v. Smith, 116 Mass. 265; N. Y., etc., Ry. Co. v. N. J. Electric Ry. Co., 60 N. J. L. 338. Where the owner of an automobile permitted his chauffeur and certain companions to use it for pleasure and while so using it the plaintiff was injured by the chauffeur's negligence, the master was not liable: Davies v. Anglo-American Auto Tire Co., 145 N. Y. Supp. 341. To the same effect is Wyllie v. Palmer, 137 N. Y. 248. The owner of an automobile is not liable for its negligent use to the injury of a stranger by one to whom he had loaned it and who was in complete control of its operation, although the owner is, at the time of the accident, present

in the machine as a guest: Hartley v. Miller, 130 N. W. Repr. (Mich.) 336. Nor where a machine has been loaned to the owner's brother: Parsons v. Wisner, 113 N. Y. Supp. 922. The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged.

The lending of the car to the chauffeur is a species of bailment without compensation. It is similar to the hiring and lending of horses and carriages. When a servant procures the loan of an animal from the master, the relationship of master and servant is for the time being dissolved, and if the servant appropriates the animal during the period of this dissolution he would be prosecuted criminally as a bailee. The analogy between the two classes of facts is very close. While the driver of an automobile must be skilled and licensed, this should not interfere with the application of the principles which control in the hiring of a vehicle. It needs no citation of authorities to sustain the proposition that, where one hires a carriage and through his negligent driving injury results, he and not the owner is responsible. In the case of hiring the owner receives a compensation for its use and is to some extent benefited by the contract of hiring. In borrowing or lending the owner receives no compensation for its use and is not benefited by the lending of the machine. When the chauffeur asked for permission to take the car for his family, the owner parted with the complete control of the car. The lending was unrestricted by instructions of any sort and unlimited as to time. The services of the chauffeur for the day for which he was temporarily employed had been completed when the accident happened. He was wholly at liberty from his master's engagement, pursuing his own business exclusively. The injury was inflicted before the journey upon which he went was completed, as he had not yet arrived at his home. He was in the act of bringing his family home. The lending of the car was not associated

with the duties of a chauffeur.  The fact that he was a long distance from the garage, returning with his family to his home and thence to the garage, would not have the effect of renewing the relationship of master and servant.  The special property he had in the car continues under his temporary ownership until, at least for the purpose of this case, the time the accident happened; if not, until the car actually reached the garage.

Referring again to the close analogy as to the use of a carriage, attention is called to Bard v. Yahn, 26 Pa. 482.  The son was in the employ of his father for wages. A fair was being held near their residence, and the son, for hire, paid to himself, drove certain persons to the fair with a team belonging to his father.  The father did not forbid him to take the team or express any disapprobation thereafter.  Speaking of it the Supreme Court say: "Elijah was not in his father's employ when the act complained of was committed.  He was neither acting for his father's benefit, nor by his direction.  There was no direct evidence that he took the horses to go to Reading, with his father's consent.  But the consent of the father, even if expressly given, would not have rendered him liable for injuries occasioned by his son's negligence.  If one lets or hires to another a horse to be used exclusively for the purposes of the latter, the owner of the horse is in nowise responsible for the negligent manner in which the horse may be used.  That Elijah was in his father's employ generally, did not create the relation of master and servant, so that he could not act for himself and be solely responsible for his own negligence.  From all the evidence in the case, we are clearly of the opinion that David Wenrich was not liable for his son's negligence in leaving the horses in the street to the plaintiff's injury."  In Herlihy v. Smith, supra, the master was not held liable for negligent driving where he had loaned his team to his servant for a short time to do an errand for the servant's mother.

We do not consider that the act of the master was

sufficient to ratify the wrongful act of the servant when he returned over the route to ascertain if any person had been injured and the extent of those injuries. To say that where one who is not otherwise liable becomes liable because he performs an act of charity to relieve people in distress would have a tendency to withhold, in other meritorious cases, this relief for fear of ultimate liability where none existed. What was said in Moon v. Matthews, 227 Pa. 488, is not in conflict with what we have just stated. In that case the visit to the injured person was some time after the accident and a proposition of settlement had been submitted, but these facts, as discussed by Mr. Justice POTTER, were not the controlling features of that case. A member of the defendant's family was using the car. She had directed the chauffeur to take the car, with herself and a few guests, on a trip. Clearly the car was not being used by the servant in his own business, but at the command of one who presumptively had authority to give it.

All the statements of the chauffeur made at the time the defendant came to the house with him immediately after the accident are statements that could be used without subjecting the defendant to liability. It has been decided that the facts of ownership and that the driver was the owner's chauffeur do not fix liability: Lotz v. Hanlon, supra. Plaintiff must prove "that the relation of master and servant existed between the defendant and the person in charge of the car at the time of the accident, that the servant was engaged in his master's business and was acting within the scope of his employment at the time the tortious act was committed, resulting in the injury to the plaintiff. The servant must not only be engaged in and about his master's business, but must be acting within the scope of his employment in operating the machine, to impose liability upon the master:" Luckett v. Reighard, 248 Pa. 24. In that case the reason for the chauffeur's deviation from the direct route did not

appear.  He was returning the car to the garage from the owner's house.  It is there pointed out what circumstances might have caused the deviation, all of which would have been within the line of his duties. In the case at bar the purpose of the independent journey is plainly set forth.  There is a fair probability that the material part of this conversation was not within the hearing of the defendant.  Waiving this consideration we do not believe this defendant was required at this time and place to enter into a denial of liability, or an explanation of the chauffeur's remarks. His purpose in going to the house was to ascertain if any person had been injured.  He found the injured person and having found her, he rendered such assistance possible.  The denial of the chauffeur's remarks supposedly imputing liability would not be proper or expected at this time.  The primary thought was a little higher, it was the relief of the injured.  We know of no rule of law which would require an owner in an emergency such as this, to be on the lookout for unauthorized statements tending to make him liable, and if made, to immediately enter a denial, regardless of the circumstances of the visit or the probable result such denial might provoke.  The words are indefinite and would not change the character of the act, the doing of which was in no sense for the owner's benefit but was for the exclusive benefit of the chauffeur.  In the light of the mission on which the car was taken, the circumstances under which the remarks were made, and the words used, they would not effect more than was said in the opening of this opinion, to wit, a permission to use or a loaning of the car.

The assignment of error is overruled and the judgment affirmed at the cost of the appellant.

RICE, P. J., dissenting:

The plaintiff's witnesses testified to declarations made by the defendant and by Volz in his presence immedi-

ately after the accident, to the effect that Volz was the defendant's chauffeur, that the defendant was the owner of the car, and that the latter was not in it at the time of the accident. He did not then disclaim liability upon the ground that Volz was not acting for him at the time of the accident, nor did he contradict, qualify or explain the statement Volz is alleged to have made in his presence that "he had been taking Mr. Shaw home and after he took him home he told him to go back for his family." The accident occurred after he had taken his family in the car and while he was on his way to his home and the garage which were on the same premises. If the case had rested here, the question as to whether Volz was at the time acting within the scope of his employment would have been for the jury. It would have been the province of the jury to determine what Volz said, and the meaning of what he said: Maynes v. Atwater, 88 Pa. 496. Nor did the question whether Volz was acting by direction of the defendant or was a mere bailee become a pure question of law for the court, when Volz, as a witness for the defendant, testified that after he left the defendant at his home he asked "permission" to use the car to bring his family home. In view of the admission or declaration alleged to have been made at the time of the accident, it was not the province of the court to declare that the version he gave on the witness stand must be taken as verity. The principle seems to me applicable that where the plaintiff has made out a prima facie case which he was entitled to have submitted to the jury, the case is none the less for the jury because the defendant adduced oral testimony which, if believed by the jury, would warrant or require them to find against the plaintiff.

Granting, however, that the words of the defendant were permissive, rather than directory, it does not necessarily follow that binding directions should have been given for the defendant. When the chauffeur left the defendant at his home, the former would still have been

acting within the scope of his employment in taking the car to the garage. If the defendant permitted him to go a longer way round in order to pick up his family on the way, was he not acting within the scope of his employment in going to the garage after picking up his family? I am inclined to the opinion that under all the evidence a finding by the jury that at the time of the accident he was acting not only for himself, but for the defendant, would have been warranted. Therefore I am unable to concur in the judgment.

Judge ORLADY authorizes me to say that he concurs in the foregoing dissent.