Lang et al. *v.* Hanlon (et al., Appellant), (No. 1).

Argued October 7, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Harold E. McCamey,* of *Dickie, Robinson & McCamey,* for J. A. Freyvogel, appellant.—Freyvogel was not liable: Funston v. Ingenito, 282 Pa. 124; Matlack v. Chalfant, 69 Pa. Superior Ct. 49; Wollaston v. Park, 47 Pa. Superior Ct. 90; Connor v. McCandless, 84 Pa. Superior Ct. 307; Simonton v. Morton, 275 Pa. 562; Thatcher v. Pierce, 281 Pa. 16.

John Duggan, Jr., with him *Morris G. Levy*, of *Levy, Crone & Berger*, for Elizabeth Lang, William Lang and Alice Lang, appellants.

Ira Hurwick, with him *Edward G. Coll*, for M. A. Hanlon, appellee, cited: Bailey v. Lavine, 302 Pa. 273.

OPINION BY MR. JUSTICE MAXEY, November 23, 1931:

On June 18, 1927, Elizabeth Lang, then about twenty years of age, was a guest in an automobile owned and driven by her father, one of the adult plaintiffs named herein. This car was in a funeral procession which was proceeding easterly on Fifth Avenue, Pittsburgh. Freyvogel, an undertaker, one of the two defendants, was conducting the funeral procession. Cars in front of the Lang car came to a stop and Lang, after giving the proper signal to the cars in the rear, brought his car to a stop. It had been stopped about fifteen or twenty seconds when an automobile in the rear crashed into it, substantially injuring the minor plaintiff. The car which crashed into the Lang car was furnished by Hanlon, the other defendant. This action was brought under the Joint Suit Act of June 29, 1923, P. L. 981, by Elizabeth Lang, by her father and next friend, William Lang, and William Lang and Alice Lang, in their own right, averring joint liability of Freyvogel and Hanlon. It was undisputed that Hanlon, also an undertaker, furnished certain cars, including the colliding car, to Freyvogel for this funeral. Hanlon testified that Freyvogel had as complete charge of the drivers of these rented cars as if they were his own chauffeurs. The driver of the car causing the injury testified that he was instructed to obey Freyvogel's orders and was placed in line by him. When this case was first tried, Freyvogel moved for a nonsuit because the evidence did not show that the accident was caused by the negligence of his own servant, and Hanlon made a similar motion for the reason that the accident was not caused by his servant.

Both motions were granted. This court upon appeal from that judgment reversed the court below and awarded a procedendo, stating (302 Pa. 173) : "If it is not clear from the evidence which of the defendants was the controlling master, then, inasmuch as the business of both was benefited, the question is for the jury to find, if they can, who exercised supervision and control at the time of the accident. If unable to so find, then both defendants will be liable, for here was undoubtedly a tortious act, and the Act of 1923, P. L. 981, was enacted to meet just such a situation as this." The case was then retried and a verdict was found in favor of Elizabeth Lang for $15,000 and in favor of her parents in the sum of $770. Freyvogel made motions for judgment n. o. v. and for a new trial. Hanlon made a motion for judgment n. o. v. The court granted the motion of Hanlon and directed judgment to be entered in his favor. The motions of Freyvogel for judgment n. o. v. and for a new trial were overruled. Then, upon the filing of the suggested remittitur reducing Elizabeth Lang's verdict to $12,000, judgment was entered on the verdict. Freyvogel appealed.

The only question before us is whether the liability for the negligence alleged and proved was Freyvogel's or Hanlon's. Hanlon testified that he furnished to Freyvogel two cars with drivers for the funeral in question, charging him $10.50 per car for the funeral, that he directed these drivers to report to Freyvogel, and that he (Hanlon) had nothing to do with the conducting of the funeral and nothing to do with the directing of the drivers after they reported to Freyvogel. Anthony, the driver, testified that he reported to Freyvogel, that Freyvogel or his assistant placed him in line and gave all the drivers a number, that he (Anthony) was instructed to follow Freyvogel, who was at the head of the line, and that he (Anthony) should keep close enough to keep anyone from cutting in. Freyvogel testified that when Hanlon sends a driver and a car to him for a funeral

that he (Freyvogel) "has charge of him" until the funeral is over. He testified that he had the right to place the driver in line and tell him where he was going and what to do. He was asked if he did not have control over the drivers of the cars he got from Hanlon. He answered: "Only to the extent of ordering a car out of line." He was also asked: "You could send him out of the funeral and back to Mr. Hanlon?" He answered: "With the car." He was also asked: "But you had the authority to discharge him and the car?" He answered: "Yes, we have."

The evidence in this case clearly establishes the relation between Freyvogel and Anthony, the driver, as that of master and servant at the time of the negligent act complained of and brings this case within the principle enunciated in 26 Cyc. L. & Pr. 1285, cited by this court with approval in Puhlman v. Excelsior E. & S. C. Co., 259 Pa. 393, as follows: "Where one person lends his servant for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him. ...... The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." In the same case this court said: "The same rule is formulated in the opinion in Standard Oil Co. v. Anderson, 212 U. S. 215, as follows (page 220): 'One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation.'"

We agree with the court below that the evidence showed that Freyvogel, and not Hanlon, was Anthony's master at the time of the accident.

Appellant presses on our attention the case of Funston v. Ingenito, 282 Pa. 124. In that case the undertaker to whom the car and driver were hired testified that "she had no control over the chauffeurs." The jury apparently accepted her testimony and found a verdict against the person to whom the offending car belonged. This court in that case, in a per curiam opinion, said that the case was ruled by Matlack v. Chalfant, 69 Pa. Superior Ct. 49, in which it was held, "Where an owner of auto trucks hires them out at a per diem compensation, furnishing driver, oil, gasoline and accessories, and the driver is under the control of the owner during the entire period for hire, while the bailee cannot discharge the driver and had no authority over him, except to direct the place to which he shall drive, the owner is liable for an injury caused to a third person by the negligent act of the driver occurring during the period of his hire, if the bailee has not interfered with the operation of the truck." In that case the Superior Court, in an opinion by Mr. Justice KEPHART, then of that court, said: "The jury found, from the evidence submitted by the plaintiff in discharge of the burden imposed on him, that the car was under the control of the defendant during the period of hire, that the Mack Paving and Construction Company could not discharge the driver and had no authority over him except to direct the place where the material was to be taken. Where a master lends or hires his servant to another to be engaged in the business of other persons, subject to their directions and control, the servant becomes the servant of the new master though he is paid by the old master: Scheel v. Shaw, 60 Pa. Superior Ct. 73. Where the owner of a car lends or hires it to another and it is wholly under the use, direction and control of the borrower or hirer, the relation of bailor and bailee is created and the bailor is not responsible for the negligent use of the car: Scheel v. Shaw, supra. It will be noted that the controlling principal and the test is the power to direct and control." In that

case it appears from the opinion of the Superior Court that the bailor retained in himself a certain control over the bailed property.

In the case before us the bailor retained no control over the bailed property. The rented car and its driver were entirely subject to Freyvogel's orders; in fact when Anthony crashed into the car ahead, it was an attempt, made without due care, to obey Freyvogel's general orders to keep outside cars from cutting into the funeral procession. While that procession was under way, Freyvogel had as much control over Anthony as he had over the servants who were in his regular employ. While he could not discharge Anthony from permanent employment, he could have discharged him from that afternoon's employment, for, as he testified, he "could have sent Anthony out of the funeral and back to Mr. Hanlon with the car." The relation of master and servant does not depend upon the mere duration of the employment. It is clear that when the negligent act was committed Freyvogel was Anthony's "master" and Anthony was engaged in that master's business, for one of the principal tests of the relation of master and servant is "the power and duty [of the alleged master] to control the alleged servant while in his employ": 39 Corpus Juris 1269, section 1454.

This court in previously sending this case back for trial said: "The question is for the jury to find, if they can, who exercised supervision and control at the time of the accident." It is true that the jury found that *both* defendants were liable, but if this joint verdict was not warranted by the evidence and if the verdict against Freyvogel was warranted by the evidence, the court had authority to enter judgment n. o. v. in favor of Hanlon and to refuse to enter judgment n. o. v. in favor of Freyvogel. It had the power to do so under the Act of June 29, 1923, P. L. 981: Cleary v. Quaker City Cab Co., 285 Pa. 243.

Freyvogel's liability arises not from any negligent act of his, but solely from the fact that he as the master of Anthony that afternoon was liable for the latter's negligent act done in the scope of his employment. This is the principle of respondeat superior. Responsibility goes with authority. Having power to control, the master is bound to exercise it to the prevention of injuries to third parties or he will be held liable.

The judgment is affirmed.