Gordon, Appellant, *v.* S. M. Byers Motor Car Co., Appellant, et al.

454

Argued October 4, 1932.  Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James J. Purman,* with him *Joseph Patton* and *A. A.
Purman,* for appellant, Laura Walsh Gordon.—The
truck driver was the agent of each defendant, and both
are jointly liable: Lang v. Hanlon, 302 Pa. 173;  Lang
v. Hanlon, 305 Pa. 378.

*W. C. Montgomery,* with him *John H. Murdoch, Jr.,* for appellant in Appeal No. 158, and appellee in Appeal No. 193.—Under the "Lent Servant Doctrine" responsibility for the accident rests upon the special employer: Puhlman v. Excelsior, 259 Pa. 393; Scheel v. Shaw, 60 Pa. Superior Ct. 73.

With respect to this defendant, the evidence shows that it had no control over the truck driver: Hobel v. Ry., 233 Pa. 450; Delmas v. Kemble, 215 Pa. 410.

*J. I. Hook,* of *Scott & Hook,* with him *Marriner & Wiley,* for appellee, J. N. Hazlett.—The truck company controlled its servant and was responsible for his negligence: Matlack v. Chalfant, 69 Pa. Superior Ct. 49; Thatcher v. Pierce, 281 Pa. 16; Funston v. Ingenito, 282 Pa. 124.

The truck company was liable alone under the case of Lewis v. Byers Motor Car Co., 102 Pa. Superior Ct. 434.

OPINION BY MR. JUSTICE LINN, November 28, 1932:

The verdict was against both defendants, Hazlett and the Byers Company, who were charged as joint tortfeasors: Act of June 29, 1923, P. L. 981. It establishes that the death of plaintiff's husband resulted from the negligence of Lewis, the driver of the truck. The point in the case is, who is responsible for Lewis's conduct—Hazlett, or the Byers Company, or both; whose servant or agent was he in doing the acts that resulted in the explosion? The answer depends on whether either or both retained the power of controlling* the work that caused

---

* On this subject, compare Rosen v. Diesinger, 306 Pa. 13, 158 A. 561, with Solomon v. Allen, 103 Pa. Superior Ct. 373, 157 A. 363; Lang v. Hanlon, 305 Pa. 378, 157 A. 788, with Funston v. Ingenito, 282 Pa. 124, 127 A. 470; see, too, Persing v. Citizens T. Co., 294 Pa. 230, 144 A. 97; Bojarski v. Howlett, 291 Pa. 485, 140 A. 544; Robson v. Martin, 291 Pa. 426, 140 A. 339; Byrne v. Hitner, 290 Pa. 225, 138 A. 826; Sgattone v. Mulholland, 290 Pa. 341, 138 A. 855; Denton v. Yazoo, etc., R. R. Co., 284 U. S. 305.

the damage. On defendants' motions for judgment pursuant to the Act of 1905, P. L. 286, judgment was entered for Hazlett, notwithstanding the verdict for plaintiff, and a new trial was granted to the Byers Company solely because the trial judge thought he might have misled the jury in submitting the case to them as against both defendants. It will appear that he was correct in so submitting it. The plaintiff and the Byers Company have appealed; as their appeals were presented together, they will be disposed of in one opinion.

Plaintiff's husband was killed by the explosion of gasoline, resulting from overflow from a truck while trying to unload it in proximity to an open fire in Minor's garage.

Byers Company is engaged in selling motor trucks. Hazlett is engaged in the wholesale and retail gasoline business. He applied to the Byers Company for the purchase of a truck. The negotiation resulted in the delivery to him of a used truck with a driver, Lewis, who was employed and paid by Byers Company. The terms of the arrangement were that the Byers company should furnish the truck and the driver to Hazlett, for one week; that Lewis should demonstrate to Hazlett's satisfaction that the truck would do his work. If, at the end of the week, he was satisfied with the truck, he would pay the purchase price. If, on the other hand, he was dissatisfied and did not purchase, he would pay the Byers Company at the rate of $10 a day for the use of the truck, the oil and gas consumed by it, and the driver's service. The truck was operated under the Byers Company's license plates and owner's card, and was equipped with three tanks for the transportation of gasoline.

The demonstration began March 12, 1928, when Lewis drove the truck from the Byers Company's place to Hazlett's. Next day he loaded the tanks with 615 gallons of gasoline to be delivered to a customer, Minor. Hazlett testified, "I told him to stop the truck on the street and see Minor and find out where he wanted to unload it."

He states that "I sent two compartments of high test, ......and one compartment of motor......;" as it was a warm day, 5 gallons were drawn from each compartment, to allow for expansion, for, as he said, "It will expand more in warm weather than in cold weather." Lewis drove the loaded truck into Minor's garage to make delivery, his storage tanks being under the floor. In one corner of the garage an office was partitioned off, with doors and windows opening into the main part of the garage where the truck was. This office contained a stove with an open gas flame burning, between thirty and forty feet from the inlet to the storage tank. The truck stood between the tank intake and the stove. Lewis connected the truck hose with the intake to convey the gas from the truck to the tank "but the gasoline didn't flow;" the pop-valves installed on the truck were insufficient to release the gas or were out of order.[1] Lewis then got on the truck and "turned the large cap [manhole cover] 12 inches in diameter on the top of the gas tank, turned it loose," and, while doing so, in the words of a witness, "apparently there was so much pressure in there [in the tank] the lid flew off it."[2] The result was that "the gas was spurting from the top of the gas tank truck;" it "ran over the floor;" "probably an inch and a half or two inches of gasoline flowed up from the outlet and down over the sides of the gas truck." This witness

---

[1] Byers testified: "There was a twelve-inch manhole cover [on each compartment] in which was drilled a three-quarter-inch hole for the purpose of a vent valve, and that cap was equipped with Crane's pressure vent valve set to pop off at five pounds pressure."

[2] A witness testified: "Q. Why wouldn't it go down into the tank; what do you say would be the reason for the gasoline not going down into the tank? A. Well, the gasoline was disturbed or shaken. If the truck had stood in the garage a half day they could have unloaded it and it would have gone down in the tank, but they tapped the gasoline tank while it was disturbed, the gasoline was foaming and it wouldn't flow out. Q. That's the reason it wouldn't go out of the hose? A. That's the reason it wouldn't go out of the hose."

was between the truck and the stove,—standing "in the door leading into the garage from the office to see what it was all about," and testified that when the gasoline spurted out and overflowed, as described, "it exploded behind me [where the stove was] in the office......;" he testified that "the open stove being lighted, ignited the gas fumes."

The evidence justified the conclusion, which, we must assume, the jury reached, that the explosion resulted from precipitating that quantity of gasoline and accompanying fumes or gasoline vapor in the garage so near the flaming gas stove. While manipulating the mechanism on the truck, as described, Lewis was acting in the course of his employment and instructions, actual or implied, received from Byers Company, as part of the demonstration of the performance of the truck. In his efforts to deliver the gasoline to Hazlett's customer, he was carrying out the instructions of Hazlett.

There is no important difference in the testimony of Hazlett and the witness, Byers, about the terms and character of the employment of Lewis by each; they are in substantial agreement. Byers employed Lewis, who had not theretofore been in the employ of his company, for one week at $3 a day, for the express purpose of driving the truck in and about Hazlett's work to make the demonstration referred to. Lewis, thus in the sales service of Byers Company as demonstrator, was transferred to the service of Hazlett, also to do his work as directed by him. The employment involved a double service (a) to Byers Company (b) to Hazlett. Hazlett testified that he had "direction and control" over Lewis, limited "only for the gasoline;" "just for the delivery of gasoline." While demonstrating the truck, Lewis was assisting in making a sale of the truck for the Byers Company. "The control of the work reserved to the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof:" Simonton v. Mor-

ton, 275 Pa. 562, 569, 119 A. 732. And it means a power of control, not necessarily the exercise of the power. Lewis was not merely performing a service that was sold or loaned by his general employer to Hazlett within the rule applied in Puhlman v. Excelsior Co., 259 Pa. 393, 103 A. 218, and kindred cases; he was at the same time assisting the Byers Company in selling the truck: Petruska v. Packard Motor Car Co., 83 Pa. Superior Ct. 112, 115; Reed v. Bennett, 281 Pa. 332, 126 A. 764. He was acting for both parties in accord with their common understanding, the power of control as to one part of this work being in Byers Company, and, as to the other part, in Hazlett.

The next question, then, is, were the acts of Lewis, that resulted in the explosion, performed on behalf of both? Was he then acting pursuant to directions from each? He was promoting the interest of Byers Company in manipulating the machinery on the truck, to cause the gasoline to flow, for, obviously, if the mechanism on the tank would not discharge the load, Hazlett would hardly wish to purchase the truck. Asked "And it was to be demonstrated to you in your business of delivering gasoline to customers, wasn't it?" Hazlett replied "Yes." Lewis was also complying with specific instructions in delivering the gasoline. The conduct, which the jury doubtless found to be negligent, was an act or acts done on behalf of both; the jury must have concluded that the tort was the ill-advised removal of the manhole cover after the pop-valves proved insufficient to cause the gasoline to flow, without first ascertaining that the place was safe to remove the cover in the circumstances (for example, that there were no open fires); the failure of the gasoline to flow normally was ample warning that particular care must be exercised.

The Byers Company controlled Lewis as demonstrator for the purpose of selling the truck, and Hazlett controlled him in delivering the gasoline. While breach of Lewis's duty to either alone, would not have involved the

other in responsibility for damage, he was negligent in doing an act for the account of both; they are joint-feasors.

A workman's compensation case, Lewis v. Byers Motor Car Co., 102 Pa. Superior Ct. 434, 156 A. 899, is relied on by Hazlett; on the record presented in that appeal, it was held that the Byers Motor Car Company was liable to pay compensation to the widow of Lewis, who was killed by the explosion. That case does not rule this. On the record presented in the present appeal, the verdict establishes that Lewis was the servant of both defendants negligently acting in the course of his employment by each, with resulting death of plaintiff's husband. In passing on motions for judgment n. o. v. we are required by a familiar rule to read the evidence in the light most favorably supporting the verdict.

The judgment in favor of J. N. Hazlett, notwithstanding the verdict for plaintiff, is reversed; the order granting a new trial to defendant, S. M. Byers Motor Car Company, a corporation, is reversed; the record is remitted with instructions to enter judgment on the verdict for the plaintiff against both the defendants.