615 F.2d 944
 William Carson RUTHERFORD, Executor of the Estate of Darryl
Buglass Mouat, Deceased, Appellant,
v.
The GRAY LINE, INC., Gray Line Tours, Inc., Gray Line
Transportation Company, Inc., Willie K. Thomas, Steven H.
Hnatvik a/k/a Hnatuik, Sorensen Transportation Co., Inc.,
Arthur W. Sorensen, Sr., Arthur W. Sorensen, Jr., and Robert
C. Sorensen, Appellees.
 No. 107, Docket 79-7336.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 26, 1979.
Decided Jan. 28, 1980.
 
 William F. O'Connor, New York City, for appellant.
 Joseph A. Cohen, New York City, Alexander, Ash, Schwartz & Cohen, New York City, for appellees Gray Line, Inc., Gray Line Tours, Inc., and Gray Line Transportation Co., Inc.
 Gerald Director, New York City, McCarthy, Marshall & Director, New York City, for appellees Willie K. Thomas and Steven H. Hnatvik.
 Donald E. Byrne, New York City, Rowan & Kane, New York City, for appellees Sorensen Transportation Co., Inc., Arthur W. Sorensen, Sr., Arthur W. Sorensen, Jr., and Robert C. Sorensen.
 Before MOORE, OAKES and NEWMAN, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 This diversity wrongful-death case presents some interesting conflict-of-laws issues, including the applicability of a Pennsylvania release with a reservation of rights to a New York accident, as well as the issue of who is a joint tortfeasor under the Uniform Contribution Among Joint Tortfeasors Act (the Uniform Act).[1] The United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, held that Pennsylvania law applied and operated to make a release given by appellant running to appellee, The Gray Line, Inc.,[2] prevent recovery against other appellees Sorensen Transportation Co., Inc., Arthur W. Sorensen, Sr., Arthur W. Sorensen, Jr., and Robert C. Sorensen (hereinafter the "Sorensen appellees"), Steven H. Hnatvik, and Willie K. Thomas. We disagree in part and reverse.
 
 
 2
 Appellant's decedent, Darryl Mouat, was killed on October 29, 1973, while operating a truck on the New York State Thruway, when a tractor-trailer driven by appellee Hnatvik crossed the median strip and struck the Mouat truck. Appellee Thomas owned the Hnatvik tractor. The trailer was owned, at least previously, by Gray Line, and bore its ICC permit number. Gray Line had leased the trailer to Thomas, whose driver was making a delivery of newspapers for Gray Line at the time of the accident. The Sorensen appellees acquired certain Gray Line interests and ICC rights, and some of its vehicles and trailers, three weeks before the accident, and there was apparently a bill of sale covering the trailer in question.
 
 
 3
 A Pennsylvania executor brought suit in the United States District Court for the Eastern District of Pennsylvania under the Pennsylvania survival and wrongful death statutes,[3] but only against Gray Line. The decedent and the sole beneficiary of his estate, a minor daughter, were citizens of Pennsylvania. Suit was also brought in the United States District Court for the Southern District of New York, for wrongful death and conscious pain and suffering, against all appellees. The Pennsylvania suit was settled with the approval of the Pennsylvania court for $140,000, $130,000 being applied to the survival action and $10,000 to the wrongful death action. A release executed in Pennsylvania and running to Gray Line was expressly "without prejudice to plaintiff to proceed against Willie K. Thomas and Steven H. Hnatvik" in the pending federal court action, with no mention being made of the Sorensen appellees.
 
 
 4
 The district court dismissed the complaint by applying New York conflict-of-laws rules, as it was required to do, Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and finding, under Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), Pennsylvania law applicable to what the judge conceived as the issues in the case: whether particular defendants were financially responsible for the accident, whether an employer is a joint tortfeasor with his employee, and whether the release to Gray Line operated to release all other defendants below. The judge found the Pennsylvania common-law rule of respondeat superior applicable, rather than the vicarious liability imposed upon all vehicle owners under N.Y.Veh. & Traf.Law § 388.[4] This finding implicitly exonerated the Sorensen appellees, whose only connection with the accident was their possible status as vendees of the trailer. The district judge also held that an employer is not a joint tortfeasor with his employee, relying on the case of Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368 (1951), although it preceded the adoption by Pennsylvania of the Uniform Act.[5] The court held that such an employer is merely secondarily liable to the primarily liable operator or employee. By virtue of this holding appellant could not benefit by the Uniform Act's provisions that a release of one joint tortfeasor does not release others unless the release so provides.[6] Then, returning to Pennsylvania's common law, the district court held that the release of one secondarily liable tortfeasor, Gray Line, even with a reservation of rights, constituted a release of all parties, citing Union of Russian Societies of St. Michael and St. George v. Koss, 348 Pa. 574, 577, 36 A.2d 433, 434 (1944), and distinguishing cases[7] that dealt with tortfeasors who allegedly committed independent and separate tortious acts. We do not see the case in quite the same way.
 
 I. The Effect of the Release
 
 5
 We agree with the district court that under Babcock v. Jackson, supra, and related cases, see Rosenthal v. Warren, 475 F.2d 438 (2d Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973), with respect to the effect of a release New York would look to the law of the state with the "superior interest" in having its policy or law applied. Thus the effect of this Pennsylvania release, executed by a Pennsylvania plaintiff, in respect to a Pennsylvania estate's claim for relief, is a matter that would ordinarily be governed by Pennsylvania law. This is true despite intimations in Ehrenzweig, Releases of Concurrent Tort-Feasors in the Conflict of Laws: Law and Reason Versus the Restatement, 46 U.Va.L.Rev. 712 (1960), that the better rule of law is, as urged by Dean Prosser,[8] to permit recovery after the release of one joint tortfeasor (with or without a reservation of rights),[9] and that this better rule should always be applied by the forum state.[10] It is clear that the New York conflict-of-laws cases have not taken this "Better Rule of Law" approach. Rosenthal v. Warren, supra, 475 F.2d at 441 n.4.
 
 
 6
 There remains a question whether, in some revisitation of renvoi, the New York courts would look in their "interest analysis" approach to the whole law of Pennsylvania (including Pennsylvania's conflict-of-laws rules), see Restatement (Second) of Conflict of Laws § 8, or only to the local Pennsylvania law on releases. Even if the New York courts did look to the whole law, however, we believe a Pennsylvania court would follow its own substantive law to determine the effect of a release given by its citizen(s), even if the accident occurred out-of-state. Bittner v. Little, supra note 10, is, we believe, no longer likely to be followed, because the second Restatement generally determines the effect on one joint tortfeasor of a release given to another by reference to the local law of the state which has the "most significant relationship" to the occurrence and the parties. Restatement (Second) of Conflict of Laws §§ 170, 145, and 6. The second Restatement is so authoritative that the Pennsylvania courts would, we feel, still apply the analogy of § 170 even if the district judge were correct in suggesting that this is not strictly speaking a case of joint tortfeasors.
 
 
 7
 Thus we must look to Pennsylvania local law. Several factors become relevant here. The first is the status of Gray Line as a tortfeasor. Under Pennsylvania law, a release "given to one not shown to be liable does not release a tort feasor." Union of Russian Societies of St. Michael and St. George, supra, 348 Pa. at 578, 36 A.2d at 435. Here, the released party, Gray Line, has denied liability in the release agreed to by plaintiff. But this denial is not determinative because, if the law is such that the other appellees may gain thereby, they retain the right to keep Gray Line among the named defendants and ultimately show its tortfeasor status. Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956).[11] Thus our remaining conclusions must be based on the assumption that Gray Line will ultimately be shown to be a tortfeasor.
 
 
 8
 We must turn then to the relationships between Gray Line and the other appellees. Does Pennsylvania law dictate that the acting, primarily liable employee is released by a release to his general employer? Does it also dictate that the secondarily liable specific employer (Thomas) or the vicariously liable vendees of the trailer (the Sorensens) are similarly released? The key issue is whether or not these other appellees are joint tortfeasors with Gray Line for purposes of the Uniform Act, 42 Pa.Cons.Stat.Ann. § 8326, which, as we have noted, provides that the release of one joint tortfeasor does not release others. We hold that all appellees were joint tortfeasors for these purposes,[12] and therefore we hold that none of the other appellees was released by the release to Gray Line.
 
 
 9
 Our general conclusion is supported by the language of the Act itself, which defines the term "joint tortfeasors" quite broadly. The term "means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.Cons.Stat.Ann. § 8322; see, e. g., Smith v. Raparot, 101 R.I. 565, 225 A.2d 666 (1967).
 
 
 10
 Looking more specifically at the various appellees, we note that the possible liability of the Sorensen interests and of Thomas (driver Hnatvik's full-time employer) is, like the liability of Gray Line, secondary or vicarious. It has long been held that two parties who are each secondarily liable are considered joint tortfeasors as between each other. E. g., Gordon v. S. M. Byers Motor Car Co., 309 Pa. 453, 459, 164 A. 334, 336 (1932); see Grasberger v. Liebert & Obert, Inc., 134 Pa.Super. 78, 4 A.2d 186, rev'd on other grounds, 335 Pa. 491, 6 A.2d 925 (1939). More importantly, there is the case of Mazer v. Lipshutz, 360 F.2d 275 (3d Cir.), cert. denied, 385 U.S. 833, 87 S.Ct. 72, 17 L.Ed.2d 68 (1966) (Mazer II ), where the Third Circuit held that a release given to a hospital for the negligence of a head technician in charge of a hospital blood bank, reserving rights, inter alia, against the operating room surgeon, did not release the surgeon even though the technician was also subordinate to him during the operation. The court relied on Pennsylvania law to the effect that a servant may have two masters at one time, McConnell v. Williams, 361 Pa. 355, 361, 65 A.2d 243, 245 (1949), a proposition which, if it is not universal, should be. Mazer holds then that the two masters are joint tortfeasors for purposes of the Uniform Act. See also Mazer v. Lipshutz, 327 F.2d 42, 54-55 (3d Cir. 1963) (Mazer I ). But cf. Sheppard v. Atlantic States Gas Co., 72 F.Supp. 185 (E.D.Pa.1947), rev'd on other grounds, 167 F.2d 841 (3d Cir. 1948). We find Mazer to be controlling.
 
 
 11
 As for the driver Hnatvik, whose liability is primary, rather than secondary, his status in relation to Gray Line is furthest from that of a "joint tortfeasor" in the traditional sense. And there is, in addition, at least one case, George v. Brehm, 246 F.Supp. 242 (W.D.Pa.1965), which reads the Act as not applying to a case involving one primarily and one secondarily liable defendant. The court there held applicable the common law rule that release of a primarily liable tortfeasor also releases one who is secondarily liable. Id. at 246. Nevertheless, regardless of the continued vitality of the specific rule stated in George, we feel certain that the courts of Pennsylvania would no longer apply the converse rule, releasing a primarily liable wrongdoer whenever there has been a release of a secondarily liable party. To do so would be anomalous, since such a release would then, based on our prior conclusions, not release other secondarily liable parties, but would release the primarily liable wrongdoer. We therefore hold that Hnatvik, like the other appellees, was a joint tortfeasor for purposes of Pa.Cons.Stat.Ann. § 8326, and has not been released.
 
 
 12
 As to the effect of the release on any damages received by appellant in the New York wrongful death action, a question which may face the district court, we think the New York courts would again look at the law of Pennsylvania. Assuming that the tortfeasor status of Gray Line is demonstrated, § 8326 would apply and require a reduction of any awards against other appellees by the amount already received from Gray Line. At minimum, there would be a reduction for the $10,000 already received for wrongful death. We leave to the district court the issue whether there should be a further reduction based on the $130,000 "survival" recovery in Pennsylvania either because some portion of that sum was actually for wrongful death and was improperly or erroneously otherwise labeled in the settlement agreement, or because some portion overlaps with a "conscious pain and suffering" recovery in New York. If, on the other hand, Gray Line is shown not to be a tortfeasor, there would be no reduction, since the benefit of this payment by a non-tortfeasor would not inure to a liable defendant. E. g., Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956).[13]
 
 II. The Vicarious Liability Issue
 
 13
 There remains a question whether, regardless of the release, the claim against the Sorensen interests must be dismissed because it is solely vicarious based on mere ownership rather than based on respondeat superior as Pennsylvania law requires. As we noted, New York law, N.Y.Veh. & Traf.Law § 388, does provide for purely vicarious liability.
 
 
 14
 We do not think that New York's "interest analysis" leads inevitably to the proposition that a New York forum court would look to the law of the victim's place of domicile (Pennsylvania) to determine the liability of the owner of the negligent vehicle. To the contrary, New York would seem to have the greater interest in determining who is liable for accidents taking place within its borders. The New York statutory policy extending liability beyond its original respondeat superior limits alone speaks strongly to this. One major purpose of this change was to help ensure that innocent accident victims would have a solvent defendant from whom to recover. See Continental Auto Lease Corp. v. Campbell, 19 N.Y.2d 350, 280 N.Y.S.2d 123, 227 N.E.2d 28 (1967) (dictum). But in addition, New York sought to discourage owners from lending or leasing vehicles to irresponsible drivers; it has pursued that goal by imposing liability irrespective of agency or employment. See White v. Smith, 398 F.Supp. 130, 136 (D.N.J.1975); Aarons v. Standard Varnish Works, 163 Misc. 84, 296 N.Y.S. 312, aff'd, 254 App.Div. 560, 3 N.Y.S.2d 910 (1937).
 
 
 15
 When we compare Pennsylvania's interest in the vicarious liability issue with that of New York, it becomes clear that Pennsylvania's interest is relatively minimal. If Pennsylvania law applies, the beneficiary represented by appellant, a citizen of that state, may suffer a substantial financial loss since the Sorensen interests will not be liable. New York, on the other hand, has a real interest in deterring loans and leases of vehicles to irresponsible drivers using New York roads, a local interest that is quite similar to a state's interest in the standard of care applied to accidents within its borders. See Babcock v. Jackson, supra, 240 N.Y.S.2d at 750-51, 191 N.E.2d at 284-85 (dictum) (negligence principles of state where accident occurred should apply).[14] Thus we believe that the Sorensen interests may be held vicariously liable and that they stand in essentially the same position for our purposes as does Willie Thomas, the tractor owner and full-time employer of the driver Hnatvik.
 
 
 16
 Judgment reversed and remanded.
 
 MOORE, Circuit Judge (concurring):
 
 17
 I concur in the result. I agree that all appellees were joint tortfeasors and that "none of the other appellees was released by the release to Gray Line", if by "other appellees" is meant appellees other than The Gray Line appellees. I would not speculate as to what the courts of Pennsylvania may decide in the joint tortfeasor field. It is clear, however, that Gray Line bought its peace vis-a-vis the Mouat Estate and that the consequences thereof should be governed by the laws of Pennsylvania.
 
 
 
 [1]
 The Act is codified at 42 Pa.Cons.Stat.Ann. §§ 8321-8327, formerly at Pa.Stat.Ann. tit. 12, §§ 2082-2089
 
 
 [2]
 The release also ran to Gray Line Tours, Inc., and Gray Line Transportation Co., Inc. All Gray Line appellees are hereafter referred to in this opinion as "Gray Line."
 
 
 [3]
 The Pennsylvania Survival Act permits an executor to recover the pecuniary loss to the decedent himself, and thus to his estate, as well as damages for his conscious pain and suffering. 20 P.S. § 320.621. The Wrongful Death Act permits recovery for the pecuniary loss to certain enumerated relatives, plus costs of medical care and funeral expenses. 12 P.S. §§ 1601 et seq. The claims are separate and distinct though a single verdict is proper where, as here, the recipient(s) of the awards are identical. See Martin v. Swift, 258 F.2d 797, 799-800 & n.6 (3d Cir. 1958)
 
 
 [4]
 The New York law is broader in some respects because it imposes liability on both the owners of a tractor and those of its trailer, as well as on a vendee, from the moment he takes possession. N.Y.Veh. & Traf.Law § 388 provides in part:
 
 
 [1]
 Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, expressed or implied, of such owner. Whenever any vehicles as hereinafter defined shall be used in combination with one another, by attachment or tow, the person using or operating any one vehicle shall, for the purposes of this section, be deemed to be using or operating each vehicle in the combination, and the owners thereof shall be jointly and severally liable hereunder
 
 
 [2]
 As used in this section, "vehicle" . . . shall also include "semi-trailer" and "trailer" as defined in article one of this chapter, whether or not such vehicles are used or operated upon a public highway
 
 
 [3]
 As used in this section, "owner" shall be as defined in section one hundred twenty-eight of this chapter and their liability under this section shall be joint and several. If a vehicle be sold under a contract of sale which reserves a security interest in the vehicle in favor of the vendor, such vendor or his assignee shall not, after delivery of such vehicle, be deemed an owner within the provisions of this section, but the vendee, or his assignee, receiving possession thereof, shall be deemed such owner notwithstanding the terms of such contract, until the vendor or his assignee shall retake possession of such vehicle. A secured party in whose favor there is a security interest in any vehicle out of his possession, shall not be deemed an owner within the provisions of this section
 
 
 [5]
 42 Pa.Cons.Stat.Ann. § 8322 provides:
 As used in this subchapter "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.
 
 
 [6]
 42 Pa.Cons.Stat.Ann. § 8326 provides:
 A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.
 
 
 [7]
 Frank v. Volkswagenwerk, A.G., 382 F.Supp. 1394 (E.D.Pa.1974), rev'd in part, 522 F.2d 321 (3d Cir. 1975); Blanchard v. Wilt, 410 Pa. 356, 188 A.2d 722 (1963)
 
 
 [8]
 W. Prosser, Handbook of the Law of Torts § 49, at 301 (4th ed. 1971)
 
 
 [9]
 As Ehrenzweig notes, this construction prevails in Pennsylvania under the Uniform Act. Ehrenzweig, supra, at 712 n.5
 
 
 [10]
 Ironically, the case Professor Ehrenzweig's article criticizes, id. at 713, is a Pennsylvania diversity case where the court rather woodenly applied the law of the place of the accident (Virginia) to hold a release of one to bar action against other tort-feasors. Bittner v. Little, 270 F.2d 286, 288 (3d Cir. 1959)
 
 
 [11]
 Interestingly, when a plaintiff and one tortfeasor agree to a release that concedes liability, at least in effect, by calling for a reduction in any further recoveries against other defendants by the amount already received, that concession is determinative. Griffin v. United States, 500 F.2d 1059, 1071-73 (3d Cir. 1974). The concession is a benefit bargained for by the released party, to avoid further litigation. A pro rata reduction may also be the result when the tortfeasor status of a release party is clear from the circumstances. See Mazer v. Security Ins. Corp., 507 F.2d 1338 (3d Cir. 1975) (en banc) (Mazer III)
 
 
 [12]
 If the converse were true, the question would be whether the Pennsylvania common law rule that release of one releases all, Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 (1959) (judgment); Thompson v. Fox, 326 Pa. 209, 192 A. 107 (1937) (settlement), applies not only to joint tortfeasors but also to tortfeasors that are related in other ways. Union of Russian Societies of St. Michael & St. George, supra, at first blush, appears to give us a negative answer, 348 Pa. at 578, 36 A.2d at 434 ("Nor is it material whether the tort-feasors involved committed a joint tort or concurrent or successive torts, because the principle which underlies the rule is that the injured person is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end."). This case of course begs the question whether he has obtained compensation when he has settled with one party, a question that at least in Frank v. Volkswagenwerk, A.G., 522 F.2d 321, 323-28 (3d Cir. 1975), was thought to be determinative after enactment of the Uniform Act under Blanchard v. Wilt, 410 Pa. 356, 188 A.2d 722 (1963), quoted in id. at 325-26
 
 
 [13]
 As we noted above, the release to Gray Line did not contain a concession of liability. Therefore, a showing of liability in court, or some objective indication of liability, see Griffin v. United States, 500 F.2d 1059, 1071-73 (3d Cir. 1974), is required before a reduction under § 8326 in the damages paid by other tortfeasors will take place
 
 
 [14]
 New York's interest in applying its vicarious liability statute to this accident is thus stronger than its interest in applying the statute when New York-registered vehicles injure out-of-state people in out-of-state accidents. Even in that situation, however, courts have applied the New York statute. See White v. Smith, 398 F.Supp. 130 (D.N.J.1975); Johnson v. Hertz Corp., 315 F.Supp. 302 (S.D.N.Y.1970)