## Peabody v. Republic Steel Corp.

*Roslyn M. Litman,* for plaintiffs.
*John David Rhodes,* for defendant.

McLEAN, *J.*, April 26, 1974—The issue now before the court is whether Republic Steel Corporation, an adjudicated tortfeasor in a products liability action, should be permitted any *credit* against the verdict and judgments returned against it because of the settlement payment of $50,000. to plaintiffs by the Allegheny Housing Authority, which settled a prior trespass action brought by plaintiffs in which Republic Steel was an additional defendant.

The verdict of a jury has established that on December 22, 1964, Gary Peabody, then 15 years old, was washing a living-room window in the apartment where he lived with his family in preparation for putting up Christmas decorations. In order to

clean this particular window, Gary had propped one foot on the radiator knob, held onto the handle of the open window vent with his left hand, and washed the window with his right hand. While Gary was performing this task, a bolt in the top hinge of the window vent which had been manufactured, assembled and sold by defendant Republic Steel Corporation fractured, causing Gary to fall six stories to a cement landing below.

Gary, still a minor, and Sara Peabody, his mother, filed two lawsuits to recover damages for their respective losses resulting from the described accident. The first action was at 1710 April term 1966 against the Allegheny County Housing Authority. That suit alleged negligence of the authority in its capacity as landlord. The authority thereafter, on February 20, 1967, joined Republic Steel Corporation as additional defendant. The second action was filed against Republic Steel Corporation at 1845 January term 1967, alleging both negligence and strict liability. The only theory on which this latter action was tried was the products liability theory under section 402A of Restatement, Torts, 2d. In that suit Republic never sought to join any other party.

On August 16, 1968, nearly two years after the second lawsuit was filed, and upon the motion of plaintiffs' counsel, the two cases were ordered consolidated for trial. The cases were also designated complex under our local rules and assigned then to Judge Olbum. On his death in June, 1971, the cases were reassigned to the undersigned.

During the summer of 1971, plaintiffs' counsel entered into settlement negotiations with the authority on the lawsuit at 1710 April term 1966. Plaintiffs' counsel knew that the insurance cover-

age available to the authority was only $50,000., because in the authority's supplemental answer of August 3, 1967, which had pleaded governmental immunity, the authority stated that its "accident fund" was limited to $50,000. Pre-trial conferences also confirmed this fact. A settlement offer of $50,000. was made by the insurer of the authority, and on July 6, 1971, plaintiff, Gary Peabody, no longer a minor, upon receipt of a joint tortfeasors release, accepted the settlement offer and signed two original copies of the release. In addition, plaintiffs' counsel signed the original release. Sara was not asked to sign the release, nor did she at that time.

Thereafter, the authority's insurer issued a draft for $50,000. "payable to Gary Peabody and Litman Litman Harris and Specter, his attorneys." Up to this time Sara Peabody had not signed the joint tortfeasors release.

This court was apprised there had been a settlement when, on September 22, 1971, the consolidated cases were called for jury trial. We ordered the settled case at 1710 April term 1966 severed on the same date and further ordered that the case at 1845 January term 1967 against Republic Steel Corporation proceed to trial. The written order of severance was then entered on September 25, 1971, and the order settling and discontinuing the authority case at 1710 April term 1966 was entered September 29, 1971.

Jumping forward in time, the following request for admission was filed by defendant, Republic Steel, on June 11, 1973, after trial and judgment in the instant case:

"11. Each plaintiff is requested to admit that prior to September 23, 1971 Sara Peabody did not

sign any release or other writing describing settlement of her claims resulting from December 22, 1964 accident."

In an answer filed by Leonard Mendelson, guardian ad litem of Sara Peabody, on September 5, 1973 it was stated:

"Par. 11 is denied. It is believed that Sara Peabody signed the writing referred to prior to September 23, 1971. The exact date is not known but it is believed to be approximately one week prior to September 23, 1971."

Certain copies of the release in this action were made part of the record and purport to show that Sara Peabody eventually did sign a copy of the original release. It is plaintiffs' and the guardian ad litem's position that Sara Peabody signed a copy of the joint tortfeasors release prior to the trial of the instant case, thus the response to defendant's request for admission given above.

Returning to the chronological sequence of events, during the trial of the instant case, 1845 January term 1967, plaintiffs' counsel objected to the competency of Sara Peabody to testify as a witness when called by defendant. This court, on October 4, 1971, after a hearing ruled:

". . . It is the view of the Court that Mrs. Peabody would be subject to be led into practically any kind of an answer, and further that she would meet the statutory definition of a person who is incompetent in the Orphans' Court sense, that is to say, subject to being a victim of designing persons. So, the Court will sustain the objection to the competency of Mrs. Peabody to testify and the Court further finds that she needs the appointment of a guardian ad litem as provided in the Rules of Civil Procedure. We'll attend to that matter in due course."

In due course, on October 20, 1971, Leonard Mendelson, Esq., was appointed guardian ad litem of Sara Peabody at 1845 January term 1967.

On October 27, 1971, upon petition, the court approved the $50,000. settlement at 1710 April term 1966 and directed distribution of the proceeds. Settlement proceeds were ordered to be distributed to plaintiffs' counsel in the amount of $24,599.61, representing legal fees ($20,000.) and expenses ($4,599.61). Of the remaining funds, Gary was to receive $16,291.64. Gary had become 21 years of age on February 1, 1970, one year and five months prior to the July 6, 1971 settlement. The balance of $9,108.75 was to be placed in escrow in a savings account subject to removal only by further order of court.

Meanwhile, however, trial of the action against Republic Steel proceeded to verdict on October 6, 1971, $30,000. for Sara and $100,000. for Gary. Defendant's motions for new trial and judgment n.o.v. were filed; they were later argued and refused and judgments were entered in favor of plaintiffs on April 26, 1972. Upon appeal, those judgments were affirmed per curiam by the Superior Court in an order dated January 4, 1973.

In response to judgments affirmed by the Superior Court, Republic Steel made payments as follows:

To Gary and his counsel—$54,250.—representing one-half judgment of $100,000. plus interest at six percent calculated from October 6, 1971 through February 6, 1973;

To Sara and her counsel—$16,275.—representing one-half judgment of $30,000. plus interest at six percent calculated from October 6, 1971 through February 6, 1973;

To counsel for plaintiffs—$1,902.69—representing record costs through February 6, 1973.

On February 15, 1973, plaintiffs directed a writ of execution to the Sheriff of Allegheny County at execution no. 238 April term 1973, the above caption. In response to petition by Republic Steel, this court released from levy and attachment property described in the writ of execution, directed the filing of a bond, stayed execution upon judgments at 1845 January term 1967 until further order of court and directed conduct of appropriate proceedings concerning further obligations of defendant to make payment to plaintiffs. A bond was filed, discovery was conducted by plaintiffs and defendant, and in due course, upon petition of Republic Steel, a rule issued directing plaintiffs to show cause why the judgments should not be satisfied. It is that rule which frames the issues now before the court for determination.

## UNIFORM CONTRIBUTION AMONG JOINT TORTFEASORS ACT

At the common law there was no right of contribution among joint tortfeasors, but statutes in many jurisdictions, including Pennsylvania, now permit it. Pennsylvania adopted the 1939 draft of the Uniform Contribution Among Joint Tortfeasors Act of July 19, 1951, P.L. 1130, 12 PS §§2082 et seq.; (hereinafter act) in 1951 with some modification. The National Conference of Commissioners on Uniform State Laws, which promulgated the act, revised it in 1955; however, Pennsylvania did not adopt the 1955 revision. See: 18 Am. Jur. 2d, Contribution, §41.

A problem with the Pennsylvania act is that while one of its purposes may have been to encour-

age the settlement of lawsuits, it may in reality have the opposite effect, for under the decided cases releasees are usually joined as additional defendants, thus forcing them to suffer the time and costs of litigation even though their liability is discharged. Some say that another problem with the act is that plaintiffs are sometimes overpaid when the releasee-additional defendant is subsequently found not to be a joint tortfeasor because the original defendant must pay the full judgment entered for plaintiff, not reduced by the amount of the settlement. This outcome is said to be caused by the fact that no one has standing to raise the argument that plaintiff has been unjustly enriched—not the releasee, for in buying his peace he has waived any right to assert such an argument, and not the judgment tortfeasor, for he was not a party to the release nor was he a third-party beneficiary thereof. See, for example, the discussion in Griffin v. United States of America, 353 F. Supp. 324 (E.D. Pa. 1973).

## DEFENDANT'S PRINCIPAL ARGUMENT

Defendant's main argument is that the settlement between plaintiffs and the housing authority became effective subsequent to the verdict against defendant, with the result that this is a case of first impression in Pennsylvania because all the decided cases involve joint tortfeasor releases effective prior to a verdict in favor of plaintiff. Defendant's contention that the release did not take effect until after the verdict, if we agreed with him, could permit us to distinguish the decided cases interpreting the act. However, we find that the settlement and release were effective prior to the verdict, and, furthermore, whether the settlement and release occurred before or after verdict, it should have no

legal significance on the defendant's obligation to pay the entire judgment under our present statutory enactments and judicial interpretations.

## DISCUSSION

The release between plaintiffs and the housing authority reads in part as follows:

"We understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.

"This release and agreement made pursuant to the 'Uniform Contribution Among Joint Tortfeasors Act' of July 19, 1951, shall constitute a complete discharge of all liability of the said Releasees to the said undersigned, and shall constitute a reduction to the extent of the pro rata share of Releasees of the damages recoverable by us, the undersigned, from all the other joint tortfeasors.

"We, therefore, agree that should any joint verdict or judgment be recovered against the Releasees and any other joint tortfeasor by a verdict, special finding, judgment or otherwise, then this release shall be a complete discharge of the Releasees from their pro rata share of such verdict, judgment or other finding. We further authorize any Judge of any Court of record to reduce any such joint verdict or judgment by the proportionate amount for which the Releasees are found to be liable and direct that the docket be marked satisfied as to the Releasees without the payment of any further sums by the Releasees to us."

As a result of the settlement with the housing authority, plaintiffs settled and discontinued the

trespass action (1710 April term 1966) in which Republic Steel Corporation was an additional defendant. It must be remembered that the trespass action in which the housing authority was an original defendant was consolidated with the products liability case. The settlement of the one action (1710 April term 1966) occurred prior to trial and, because defendant in the later action never joined the housing authority as an additional defendant, the case went to trial with only defendant on the record. Nor was the court requested to try in the settled case the issue between authority and Republic of whether they were joint tortfeasors. That could have been done.

The language of the joint tortfeasors release, supra, is sufficient to insulate the housing authority from any further liability to plaintiffs arising from the facts of this case. The question remains whether it will relieve the housing authority from liability to make contribution to defendant under the Act of July 19, 1951, P.L. 1130 sec. 5, 12 PS §2086.

Section 5 of the act, 12 PS §2086, states:

"A release by the injured person of one *joint tortfeasor* does not relieve him from liability to make contribution to another tortfeasor, unless the release is given *before* the *right* of the other tortfeasor to secure a money judgment for *contribution has accrued* and provides for a reduction to the extent of the *pro rata share* of the released tortfeasor of the injured person's damages recoverable against all other tortfeasors." (Emphasis supplied.)

Here, the release provides for "a reduction to the extent of the pro rata share of [the releasee—Housing Authority] of the damages recoverable by

[plaintiffs] from all the other joint tortfeasors." We adopt defendant's position (on page 38 of defendant's brief) that the insertion of "joint" to modify "tortfeasors" does not change the effect of the release. The release also fulfills the first requirement of the "unless" clause because the right to contribution does not accrue until defendant pays more than its pro rata share of the total judgment and here defendant has paid to date only one-half of the total judgment of $130,000. to plaintiffs and has filed a bond sufficient to cover the balance of the judgments. Without more it would seem then that the housing authority would be insulated from an action for contribution brought by defendant. Consequently, since it cannot bring an action for contribution, defendant argues that it should be credited with one-half of the judgment against it or, in other words, a reduction by the pro rata share of the released "joint tortfeasor."

Plaintiffs' claim, on the other hand, is that the release that was provided to the housing authority was not the release of a "joint tortfeasor" as defined by the Pennsylvania decisions interpreting the Uniform Contribution Among Joint Tortfeasors Act. The cases say, according to plaintiffs, that the term "joint tortfeasor" as used in section 5 of the act, supra, means a party who in fact has been *adjudicated* a joint tortfeasor.

Looking at Davis v. Miller, 385 Pa. 348, 123 A. 2d 422 (1956), the leading decision on the status of the releasee as a joint tortfeasor, it is plain that plaintiff's position is well taken because the housing authority was never adjudicated a joint tortfeasor and therefore could not fall within the terms of section 5 of the act, 12 PS §2086. In Davis the issue was "whether the additional defendant in this case

was entitled to be eliminated therefrom before it was determined by a jury trial whether she was a joint tortfeasor with the original defendant."

Chief Justice Stern ruled that the additional defendant who had released both plaintiffs and the original defendant should remain a party to the suit. He declared:

"It is therefore clear that an important factor in the determination of the amount of damages that [original defendant] may be required to pay to plaintiffs is whether or not [additional defendant] would also have been liable to them had they not released her,—in other words whether she was a joint tortfeasor with [original defendant]. If . . . [additional defendant] was, then, under the Act and the terms of the releases which plaintiffs gave [additional defendant], they can recover from [original defendant] only his pro rata share, in this case half, of the amount to which they would otherwise have been entitled; if, on the other hand, [additional defendant] was not a joint tortfeasor, the releases given her by plaintiffs would not inure to [original defendant's] benefit."

So then, under Davis and the Pennsylvania decisions following Davis, the term "joint tortfeasor" means a party who in fact has been *adjudicated* a joint tortfeasor. This interpretation is not inconsistent with section 1 of the act, 12 PS §2082, which reads as follows:

"For the purpose of this act, the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been *recovered* against all or some of them.": Act of July 19, 1951, P.L. 1130, sec. 1, 12 PS §2082. (Emphasis supplied.)

Note that the key word is "recovered," and recovered in section 1 to be consistent with Davis's interpretation of "joint tortfeasors" in section 5 of the act must mean to collect a judgment or the satisfaction of a judgment as opposed to the entry of a judgment. Otherwise section 1 would make no sense in conjunction with the other sections of the act as interpreted by the courts.

In our present case the housing authority and defendant have never been adjudicated as joint tortfeasors. Plaintiffs cannot deny that if the housing authority had in fact been adjudicated a joint tortfeasor prior to or concurrent with the verdict against defendant, the release given by plaintiffs to the housing authority would inure to the benefit of defendant. This is in accordance with section 5 of the act as interpreted by Davis and the progeny it spawned.

Defendant's argument is that the time of the release, that is, whether it occurred before or after verdict, is the crucial factor in determining whether the judgment should be reduced as provided by section 4 of the act, 12 PS §2085.

Section 4 of the act reads, in part, that:

"A release by the injured person of one joint tortfeasor . . . reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid:" Act of July 19, 1951, P.L. 1130, sec. 4, 12 PS §2085.

We reject defendant's argument. Section 4 of the act must be read in conjunction with section 5 of the act. Section 5 of the act, as previously set forth, has been interpreted by the Davis court which has

construed the term "joint tortfeasor" to mean one who has been adjudicated a joint tortfeasor. Therefore, the key to this case is whether the housing authority has been *adjudicated* a joint tortfeasor, and since it has not, defendant cannot get a reduction on the verdict and judgment against it under section 4 of the act. It is our considered judgment that whether settlement occurred prior to or subsequent to verdict is legally without significance under the act, as construed by the cases.

What are the ramifications of denying credit to defendant on the verdict and judgment against it on the rationale that the housing authority has never been adjudicated a joint tortfeasor? It is implied in page 37 of defendant's brief that if it was denied credit it would institute suit for contribution against the housing authority. Defendant can maintain such an action because section 5 of the act, 12 PS §2086, as interpreted by Davis would permit it. Although the housing authority appears to fall within the "unless" clause of section 5, supra, and, without more, defendant would not be permitted to maintain a contribution action, the authority has *never* been *adjudicated* a joint tortfeasor and consequently defendant could pursue such an action.

Suppose that defendant does bring an action for contribution against the housing authority and it is determined in that action that the housing authority is a joint tortfeasor. An anomalous situation arises because although the housing authority is finally adjudicated a joint tortfeasor, defendant cannot recover contribution from the housing authority because the housing authority, by being adjudicated a joint tortfeasor, now falls within the terms of section 5 of the act, 12 PS §2086. In other

words, prior to the action for contribution, the housing authority fell within the "unless" clause of section 5; now it has, under our hypothesis, been adjudicated a joint tortfeasor and consequently the housing authority is relieved from making contribution. Faced with this dilemma, defendant could bring another action against plaintiffs for return of the pro rata share of the housing authority, but the better way might be to make plaintiffs original defendants in the contribution action sounding in assumpsit. If defendant proceeded as suggested, the bringing of one lawsuit would finally determine this most time-consuming litigation.

The main thrust of defendant's argument is that if we do not give it credit on the judgment against it, then this will foment a multiplicity of lawsuits. But, as we have seen, one more lawsuit might finally judically settle the rights of the parties. Furthermore, it would be unjust for plaintiffs to recover less than their $130,000. judgment in a situation where the housing authority was never adjudicated a joint tortfeasor under the teaching of Davis and the other cases.

One problem we see with this analysis is that, assuming the housing authority is not found to be a joint tortfeasor in the hypothetical contribution action instituted by defendant, then plaintiffs get a double recovery, that is, the $130,000. paid by Republic plus the $50,000. settlement by one who is later *adjudicated not* to be a joint tortfeasor. There is no way to avoid this seemingly inappropriate result under the terms of the present act and the cases.

Since both counsel briefed many pages on the issue of whether the release became effective before or after the verdict, we will discuss that ques-

tion further. It is defendant's position that the joint tortfeasors release was not effective until October 27, 1971, 21 days after the verdict against defendant in the present case, when the court approved the settlement between plaintiffs and the housing authority. The rationale of defendant's position is that one of the plaintiffs, Sara Peabody, was incompetent at the time she signed a copy of the joint tortfeasors release and therefore could not legally ratify the original release signed by Gary Peabody and his attorney on July 6, 1971.

Assuming that defendant is correct in its argument that Sara was mentally incompetent at the time she signed the release, it is basic hornbook law that the release which she signed was voidable and not void, and neither she nor her guardian ad litem has attempted to avoid the joint tortfeasors release agreement which represented the settlement arrived at in the earlier lawsuit. Additionally, it should be pointed out that on March 30, 1972, Leonard Mendelson, Sara's guardian ad litem in the first action, affirmed and ratified on behalf of Sara all actions taken by her with respect to the lawsuit docketed at 1710 April term 1966. At this same date Leonard Mendelson was also appointed Sara's guardian ad litem in the present action. See 2 Williston, Contracts §§249-256 (3d ed. 1959); 1 Corbin on Contracts §6 (1963); Restatement, Contracts, 2d (tentative draft) §18C.

Since a voidable contract is valid in the eyes of the law until the incompetent or her guardian avoids it, the signature of Sara Peabody on the copy of the release is a ratification of the original release signed by Gary and his attorney on July 6, 1971, and relates back to that date.

The final point to be treated is Republic's request

that the $50,000. settlement be credited pro tanto against the $130,000. verdicts. We have been cited no cases by defendant empowering us to do that. In fact, our research indicates that a plaintiff keeps the "extra" money he received in settlement from a defendant adjudicated not to have been a tortfeasor.

Accordingly, the rule granted on plaintiffs will be discharged, but the stay of execution will be maintained pending possible appeal of our decision.

## ORDER

And now, April 26,1974, following oral argument and consideration of the briefs of counsel, it is ordered that any rule to show cause previously granted in these proceedings is discharged and the request of defendant Republic Steel Corporation for credit on the judgments upon which execution has issued is refused.

It is further ordered, however, that the provisions of our order of February 16, 1973, staying execution and requiring bond, are to remain in force pending possibility of appeal.