**Richard J. GRIFFIN and Mary Jane Griffin, his wife**

v.

**UNITED STATES of America.**

**Civ. A. No. 39099.**

United States District Court,
E. D. Pennsylvania.
Jan. 18, 1973.
As Amended Jan. 29, 1973.

See also, D.C., 351 F.Supp. 10.

Avram G. Adler, and Stanley P. Kops, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiffs.

John Charles Kruse, and Robert D. Batson, Dept. of Justice, Washington, D. C., for defendant.

### MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The issue now before the Court is the legal effect of a release given by plaintiffs to Charles Pfizer Company on the amount for which the United States is liable to plaintiffs in this case.

The facts are undisputed. In 1965, the plaintiffs filed four separate actions based on the circumstances which gave rise to the present case. Two were cases in the Court of Common Pleas of Montgomery County, Pennsylvania against, generally, the Montgomery County Medical Society. One was in this Court against Charles Pfizer. One was in this Court against the United States. The Montgomery County Medical Society brought in Pfizer as an additional defendant in the main Montgomery County case. The United States never moved to make Pfizer a third party defendant in the case now before the Court.

In 1971, Pfizer settled with plaintiffs. The settlement was memorialized in a document which reads as follows:

KNOW ALL MEN BY THESE PRESENTS that we, RICHARD J. GRIFFIN and MARY JANE GRIFFIN, his wife, for and in consideration of the payment of Three Hundred Fifty Thousand Dollars ($350,000.) by Pfizer Inc. (sued as Chas. Pfizer & Co., Inc.) receipt of which is hereby acknowledged, and by this Release do, for ourselves, our heirs, executors and assigns, release and discharge the said Pfizer Inc., its successors and assigns from all claims, damages, liability, actions or causes of action on account of or in any way growing out of the ingestion by wife-plaintiff of Sabin Live Oral Polio Vaccine in November 1963 in Montgomery County, Pennsylvania, and all illnesses and disabilities alleged to have resulted therefrom which became the subject of a suit brought by the said Richard J. and Mary Jane Griffin in the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 39036, and also became the subject of certain other suits commenced against various defendants (but not including the United States of America) in the Court of Common Pleas of Montgomery County.

Should it appear that two or more persons or entities are jointly or severally liable in tort for the alleged injuries to wife-plaintiff, the consideration for this Release shall be received in reduction of the total damages recoverable against all the other tortfeasors to the extent of the pro-rata share of the said Pfizer Inc., and we specifically reserve all claims and causes of action arising out of the above mentioned incident against all the other tortfeasors.

The payment made to us is upon our warranty that we have not received heretofore any consideration whatever for, nor have we released heretofore any person, firm or corporation from any claim or liability for the said sickness and disability allegedly arising from the said ingestion of vaccine, and we agree to hold harmless and indemnify the said Pfizer Inc. of and from any loss, liability, growing out of any claim against it for contribution of any alleged tortfeasor under the Uniform Contribution Among Tortfeasors Act.

In order to avoid inconvenience and expense to the released party, Pfizer Inc., in any action in which the said Pfizer Inc. is or may be a defendant

or third party defendant together with other alleged tortfeasors, it is further agreed by us that any verdict rendered against the other alleged tortfeasors shall be reduced by the pro-rata share of the party released herein, Pfizer Inc., and any judgment entered on said verdict shall be in the amount of the verdict reduced by the pro-rata share of the party released herein, whether or not the released party herein was in fact a joint tortfeasor. This provision is intended to obviate the necessity and expense of having the released party herein remain a party on the record and obliged to participate at its expense in a trial merely for the purpose of determining if in fact it was a tortfeasor so as to entitle the other tortfeasors to a pro-rata reduction of any verdict. However, this provision in no way constitutes an admission of liability by the party released herein, Pfizer Inc.

We further state that we have carefully read the foregoing Release and know the contents thereof and are signing the same as our own free acts. We further intend to be legally bound by the promises herein contained.

WITNESS our hands and seals this day of 1971, in the presence of:

| | |
|---|---|
| s/ H. Gilbert Daley Jr. | s/          (SEAL) |
| | RICHARD J. GRIFFIN |
| s/ Heather-Jo Daley | s/          (SEAL) |
| | MARY JANE GRIFFIN |

As a result of the settlement with Pfizer, plaintiffs voluntarily dismissed the Montgomery County cases against the Montgomery County Medical Society. This was done as an accommodation to Pfizer, who dealt with the Medical Society in business, and also because the suits were, while brought in good faith to protect plaintiffs' rights, not the strongest causes of action ever brought, according to plaintiffs' attorney. Thus plaintiffs were willing to agree, as part of a gentlemen's agreement, to drop those cases to induce Pfizer to settle. No release of any kind was ever given to the Montgomery County Medical Society.

The language of this release is sufficient to insulate Pfizer from any further liability arising from the facts of this case to either plaintiffs or third parties under 12 P.S. § 2086, which states:

"A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another tortfeasor, unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued and provides for a reduction to the extent of the pro rata share of the released tortfeasor of the injured person's damages recoverable against all the other tortfeasors."

12 P.S. § 2085 states:

"A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid."

The government claims that the effect of the release was to release two joint tortfeasors, and that they therefore are entitled to a reduction of the pro-rata share of both, or two-thirds.

The government further claims that in any event, the release was the release of one tortfeasor, that the status of that person, Pfizer, as tortfeasor, entitled the government to at least a 50% pro-rata reduction.

The plaintiffs' claim, on the other hand, that under the law binding on this Court, the release executed to Pfizer was not the release "of a tortfeasor" in the terms of the statute, until the tortfeasor status of the released party has been determined in a judicial proceeding. Since no such determination has been had or may now be undertaken, the government is entitled to no reduction under § 2085.

The plaintiffs further contend that if any reduction is proper, it is limited to 50%, the pro-rata share of Pfizer in a set of joint tortfeasors of Pfizer and the United States, since the United States still has all possible contribution rights against the Montgomery County Medical Society.

The Court notes that plaintiffs have not argued that the reduction, if any, should be limited to one-third because the pro-rata share of Pfizer in the set of joint tortfeasors urged by the government, namely, Pfizer, the United States, and Montgomery County Medical Society, is one-third, but the Court raises the issue for reasons of symmetry.

Pennsylvania adopted the 1939 draft of the Uniform Contribution Among Tortfeasors Act in 1951 with some modifications. This act is not one which has had wide acceptance. The National Conference of Commissioners on Uniform State Laws takes the position that eleven states have adopted acts close enough to be called the 1939 act as of this writing.[1] But there is great variation among these states in the modifications made to the original draft. Resistance to the form of the 1939 draft led the National Conference to withdraw it in 1955 and issue a new draft.[2] One of the main provisions of the 1939 draft to which various commentators and state legislators objected which led to the 1955 revision was § 5 which is 12 P.S. § 2085.

The major objections to § 5 turned around the concept of a "pro-rata share" and the difficulty of determining in advance of a final trial exactly how big the set of joint tortfeasors is, and therefore what Plaintiff is giving up by settlement. This was thought to discourage possible settlements very greatly. The "pro-rata share" concept had been in-

serted in the 1939 draft to protect one joint tortfeasor from being the target of collusion and having his contribution rights cut off by a low settlement with another favored joint tortfeasor. Without the "pro-rata share" proviso, the target tortfeasor would get a reduction of only the low settlement consideration and lose his contribution rights to boot. However, by 1955, the National Conference had found that the pro-rata share language created more problems than it solved, and the 1955 draft therefore took a different approach to protecting target defendants from collusion while encouraging settlements. The 1955 draft provided, basically, for complete discharge of a settling defendant and reduction only by the consideration paid, providing the settlement was "in good faith", i.·e. reasonable and not collusive. (See § 4, 1955 draft, Uniform Contribution Among Tortfeasors Act, and Commissioners' note thereto).

█ While the "pro-rata share" concept gave most jurisdictions some problems, the status of the settling defendant as a joint tortfeasor for purposes of figuring the set of joint tortfeasors and the pro-rata share under § 4 of the Act (12 P.S. § 2085) was assumed in all jurisdictions but two: Maryland and Pennsylvania. The rule in Pennsylvania was clearly established in the 1956 case of Davis v. Miller, 385 Pa. 348, 123 A.2d 422. If a plaintiff settles with a person and a joint tortfeasor's release is given, that person may not be sued by any other person for contribution. However, if a second person is sued by plaintiff, the settling party may be brought on the record for the purposes of having the trier of fact determine whether the settler was in fact a joint tortfeasor. Unless the settler is found to be a joint tortfeasor by a competent trier of fact

1.  Arkansas, Delaware, Hawaii, Maryland, New Mexico, Pennsylvania, Rhode Island and South Dakota, and Michigan, Mississippi and New Jersey, with substantial modification. The source of this information is a telephone conversation with Ms. Frances Jones, Executive Secretary

of the National Conference of Commissioners on Uniform State Laws, January 11, 1973.

2.  This draft has been adopted in only five states, Alabama, Massachusetts, North Carolina, North Dakota and Tennessee.

in a proceeding to which he is a party before the entry of a judgment against the non-settling party, the party who previously settled is not taken to be a joint tortfeasor for purposes of 12 P.S. § 2085, and the party against whom judgment is entered has no right to have the judgment reduced as a result of the release, nor can he then sue the settling party for contribution. In response to cries that the plaintiff is unjustly enriched by a double recovery, the answer has been that there is no one with legal standing to raise the issue. The judgment tortfeasor may in fact be the sole tortfeasor, and totally liable, and therefore not have standing to benefit from the claimed unjust enrichment. Not having moved to bring in the settling party, he has waived all forums in which he might establish his right to benefit, and therefore cannot raise the unjust enrichment argument after trial to benefit himself. Similarly, the settler, in buying his peace, has waived any rights he might have to claim plaintiff was unjustly enriched by his payment, even though he was not in fact a tortfeasor. Thus, no one has standing to raise the unjust enrichment issue because all have deprived themselves by their own actions of any forum in which to prove that the unjust part of the enrichment was at their expense.

It is difficult to say what the effect of Pennsylvania's rather strange approach to this section of the Uniform Act has had on settlements in Pennsylvania under this Act. It discourages settlements in that settlers cannot be sure they won't end up having to be in court even though their liability is discharged.[3] It may on the other hand, encourage settlements in that plaintiffs may still hope to settle with a defendant whose involvement is weak, then prove his lack of liability and recover twice. Undoubtedly, the Pennsylvania approach is not judicially economical, as it renders

the trial of issues necessary which other states need not try. The Pennsylvania approach has been strongly criticized. See Note, Joint Tortfeasors, 106 U.Pa. L.R. 311 (1957). Yet it is perfectly clear that it is still the law of Pennsylvania. Davis v. Miller, supra; Long v. Thomasberger, 14 Pa.Dist. & Co.R.2d 30 (C.P. Cambria Co. Pa., 1958); Brown v. Pittsburg, 409 Pa. 357, 186 A.2d 399 (1962); Eckels v. Klieger, 205 Pa.Super. 526, 210 A.2d 899 (1965); Cox v. Owen, 34 Pa.Dist. & Co.R.2d 793 (C.P. Mont.Co., 1965). See also Blanchard v. Wilt, 410 Pa. 356, 188 A.2d 722 (1963) (dictum).

In Mazer v. Lipschutz, 360 F.2d 275 (1966), the Third Circuit dealt with the issue quite directly and comprehensively and, although critical of the Pennsylvania construction of the language of § 2085, said:

> "[A]ll the parties are entitled to the full benefit of the ruling state law. That law firmly holds that if the defense desired that the hospital peace payment be deducted from any plaintiff's verdict as the sum paid by a joint tortfeasor, the hospital should have been joined as a defendant and its tortfeasor liability fixed under the explicit Pennsylvania law. If that doctrine needs to be changed the matter should be called to the attention of the Pennsylvania legislature. We are bound to function in this type of litigation under the state law as it now exists."

So is this Court in this case bound to function under state law as it now exists. Pennsylvania law is determinative and binding on both parties to this case under the Federal Tort Claims Act [See this Court's previous opinion in Griffin v. United States, 351 F.Supp. 10 (1973)]. The law of Pennsylvania has not changed since Mazer v. Lipschutz. If the United States wished to benefit from the terms of the joint tort-

---

3. The effects of this possibility have been ameliorated to some degree by the insertion of hold harmless provisions and obligation to defend clauses in many joint tortfeasor releases such as the one in the present case.

feasor's release between Pfizer and plaintiffs, it was necessary under Pennsylvania law for the United States to join Pfizer as a third party defendant for purposes of determining Pfizer's joint tortfeasor status in fact. This was not done. There has been no judicial determination of Pfizer's joint tortfeasor status. It is true that the release agreement between Pfizer and plaintiffs specifies that the judgment is to be reduced by Pfizer's pro-rata share without the necessity of determining Pfizer's actual joint tortfeasor status "in any action in which the said Pfizer is or may be a defendant or third party defendant." This clause was clearly intended not to come into play until Pfizer was actually made a party to such action, however, as it was given to free Pfizer from the necessity "to *remain* a party on the record." (emphasis supplied) The United States is not a third party beneficiary of this clause, as it is clearly intended to benefit Pfizer only, under the narrow circumstance of its being joined. Even if Pfizer had been joined, the United States would have no enforceable interest in this clause absent reliance or its entry on the record by stipulation, and Pfizer might properly have agreed to release plaintiffs from the clause even after joinder. And the United States cannot claim any reliance on this agreement in any way here, not only because it does not by its terms apply until Pfizer is made a party, but also because the United States admittedly did not know of the exact language of the release until after trial, but only that there was, generally, a joint tortfeasor's release. The United States is entitled to *no reduction in the amount of the award* to plaintiffs in this case under 12 P.S. § 2085 or any other section of Pennsylvania law.

The Court notes in passing that this rationale would be as applicable to the status of the Montgomery County Medical Society as it is to Pfizer, if the original release specifically included the Montgomery County Medical Society. However, this Court is of the opinion that the original release affected Pfizer only, and that any rights of contribution the United States may have had or now have against the Montgomery County Medical Society are unaffected by it.