**Roland YOUNG**

v.

**VERSON ALLSTEEL PRESS COMPANY**

and

**Federal Pacific Electric Company.**

Civ. A. No. 79–2817.

United States District Court,
E. D. Pennsylvania.

Oct. 26, 1981.

Joseph Lurie, Richard Shapiro, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for plaintiff.

Lawrence T. Hoyle, Jr., Carole E. Handler, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

William G. Adamson, Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa., for Verson Allsteel Press Co.

Bruce Lombardo, Philadelphia, Pa., for Federal Pac. Elec. Co.

MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

In this diversity action, Verson Allsteel Press Company (hereinafter "Verson"), a co-defendant, has filed a motion *in limine* to be relieved of attendance at trial. Under its view, the Pennsylvania Comparative Negligence Statute,[1] does not require a set-

---

1. In part, the Comparative Negligence Statute provides:

(a) *General rule.*—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) *Recovery against joint defendant; contribution.*—Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

42 Pa.Cons.Stat.Ann. § 7102 (1981).

tling co-defendant to be present at trial merely so that negligence may be apportioned among all alleged tortfeasors.[2]

## I. Introduction

Verson executed a joint tortfeasor release with plaintiff, Roland Young (hereinafter "Young") on March 10, 1981. Verson's co-defendant, Federal Pacific Electric Company (hereinafter "Federal") was not a party to the settlement. Federal insists that Verson is required by Pennsylvania's Comparative Negligence Statute to attend trial.

The release executed by Young and Verson, a so-called "Griffin" release, provides for a reduction in any judgment obtained by Young in an amount equal to any recovery that he might otherwise have received from Verson and for subtraction from any judgment against Federal the amount of the consideration paid by Verson to Young in settlement of the case.

Young has also agreed to indemnify Verson and to hold it harmless for any loss or liability arising from any claim against it for contribution or indemnity by any alleged tortfeasor, including co-defendant Federal. However, notwithstanding the obvious financial benefit such a release provides, Federal alleges that without Verson's presence at trial Federal will be "unfairly prejudiced." Supplemental Brief for Defendant (Federal) at 1, 3, 5, and 7.

## II. The Pre-Comparative Negligence Rule

The law in Pennsylvania before passage of comparative negligence can be summarized in a single rule. If one of the litigants could gain legal advantage thereby,[3] he reserved the right to retain a named defendant in the action and to ultimately show his tortfeasor status. Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956).

In Davis, plaintiffs were the passengers in an automobile driven by Mary Richardson. Ms. Richardson was involved in an automobile accident with a car driven by Amos T. Miller. Plaintiffs sued Miller alleging his negligence as the proximate cause of their injuries. Miller filed a complaint joining Ms. Richardson as additional defendant, alleging the collision was due to her negligence and that, therefore, the jury might find her either alone liable or jointly liable with him. Ms. Richardson filed a motion for judgment on the pleadings, the effect of which would have been to relieve her of responsibility to attend trial. Prior to such motion, Ms. Richardson had executed releases with plaintiffs and a general release with co-defendant Miller.

The court held that because Miller could benefit from a determination that Richardson was a joint tortfeasor, Richardson would be required to attend trial. Id. at 352, 123 A.2d at 424. This holding followed from the Pennsylvania rule[4] which permitted a tortfeasor to reduce any judgment found against him by the pro rata share of other settling tortfeasors. The court reasoned that Miller could not have sought contribution from Ms. Richardson unless she were adjudged a tortfeasor.[5] Id.

---

2. The motion presents a novel issue of Pennsylvania law, due to the uncertainty of the effect of Pennsylvania's new comparative negligence statute, 42 Pa.Cons.Stat.Ann. § 7102 (1981). It is, therefore, necessary for this court to make its own determination of what the Pennsylvania Supreme Court would probably rule if faced with a similar case. See Gerr v. Emrick, 283 F.2d 293, 294 (3d Cir. 1960), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961); Affiliated FM Insurance Co. v. The Mutual Fire, Marine and Inland Insurance Co. and Allan W. Williams, Inc., C.A. No. 80–2680 at 3 (E.D.Pa., October 13, 1981).

3. Pennsylvania's interpretation of its Uniform Contribution Among Tortfeasors Act, 42 Pa. Cons.Stat.Ann. §§ 8321–8327, required a de-

fendant to prove that a released party was in fact a joint tortfeasor before the defendant could obtain contribution from the released party. Koller v. Pennsylvania R.R., 351 Pa. 60, 63, 40 A.2d 89, 90 (1944).

4. See supra, at n.3.

5. This rule is understood to be plaintiff favoring in that it does not permit a sole tortfeasor to gain the advantage of a payment not made in satisfaction of a tort liability. Mazer v. Security Insurance Group, 507 F.2d 1338, 1342 (3d Cir. 1975); Griffin v. United States, 500 F.2d 1059, 1072 (3d Cir. 1974). It seems fairly clear that contrary to the intent of Davis, supra, the rule did not necessarily favor plaintiffs in its effect. Certainly, to the extent that settling defendants could still be required to participate

The next significant development of the rule of *Davis*, supra, came in *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974). The facts of *Griffin* are not complicated. Mary Griffin brought suit against the United States and Pfizer, Inc. for injuries sustained by her as a result of ingestion of Sabin oral live-virus polio vaccine. Mrs. Griffin executed a joint tortfeasor release in favor of Pfizer, Inc. in consideration of three hundred fifty thousand dollars ($350,000). After a non-jury trial in which the United States did not join Pfizer, Inc. as a co-defendant, a judgment in excess of two million dollars was awarded against the government. The district court, citing *Davis*, supra, held that since Pfizer, Inc. had not been joined, its tortfeasor status had not been judicially determined and, therefore, the government could not benefit from the terms of the joint tortfeasor's release between Pfizer, Inc. and plaintiff. *Griffin v. United States*, 353 F.Supp. 324, 328–29 (E.D.Pa.1973).

The Third Circuit speaking through Judge Rosenn, reversed that portion of the district court's opinion which prevented the government from receiving the benefit of the "Pfizer-Griffin" release. The court, relying upon the specific language of the release,[6] found that the plaintiffs had waived the benefits of the *Davis* holding. The release which plaintiffs had executed with Pfizer had in effect conceded Pfizer's joint tortfeasor status. *Id.* at 1072. Therefore, the court reasoned that the Griffins could not now object to a reduction of their judgment against the United States to the extent of Pfizer's pro rata share. *Id.* Finally, the court continued by discussing what the effect of the release would have been on any attempt by the government to join Pfizer, Inc. as a party defendant.

Even if we construe the language as contemplating a requirement of Pfizer's joinder, however, had the United States attempted to join Pfizer, the latter, under the terms of the release, could *have obtained a dismissal.*

*Id.* at 1072–73 (emphasis supplied). This conclusion was, of course, compelled by the logic of *Davis*. That is, because the tortfeasor status of Pfizer had already been conceded by plaintiff; defendant, United States, could no longer "benefit" by Pfizer's participation in the case and, therefore, any attempt to join Pfizer would have been dismissed as superfluous.

The final phase in the development of *Davis* appears in *Mazer v. Security Insurance Group*, 507 F.2d 1338 (3d Cir. 1975). *Mazer* involved the question of whether a doctor could avail himself of the benefits of a release executed between plaintiff and the hospital where the surgery had been performed. The court decided that resolution of this question turned upon an underlying fact question raised in *Griffin*:

> The holding in *Griffin* makes clear that the issue is not whether the settling party was technically joined in the lawsuit. Rather, it is whether by some reliable means there was a determination either judicially or by the plaintiffs' concession, that the settling party was a joint tortfeasor.

*Id.* at 1342. The court found that the hospital's release was an effective and binding concession of joint tortfeasor status.[7]

Therefore, under Pennsylvania law before the passage of its Comparative Negligence Statute, a co-defendant had to demonstrate that he would derive a real benefit from the joinder of a settling third party or

---

at trial, the rule of *Davis* discouraged settlements and thereby adversely affected plaintiffs. *Griffin v. United States*, 353 F.Supp. 324, 328 (1973). The *Davis* approach is strongly criticized in Note, Joint Tortfeasors, 106 U.Pa.L.R. 311, 314 (1957).

**6.** In pertinent part, it stated:
... any judgment entered on said verdict shall be in the amount of the verdict reduced by the pro rata share of the party released herein,

whether or not the released party herein was in fact a joint tortfeasor.
*Id.* at 1072 (emphasis in original).

**7.** The court found that the release conceded tortfeasor status from the attendant circumstances, i. e., the release was executed after a finding of liability on the part of an employee of the hospital even though the hospital had not been joined as a co-defendant. *Id.* at 1342.

that party's presence at trial in order to compel his attendance at trial.[8] A co-defendant could *not* demonstrate such a benefit in either of two circumstances: (1) where there existed a release which inured to the benefit of a co-defendant by its own terms because it conceded the releasee's tortfeasor status[9] or (2) where the releasee's tortfeasor status was clear from the circumstances under which the release was executed.[10] Since under both of the above sets of facts, defendant's right of contribution is protected without the need for a judicial determination of the released party's tortfeasor status, there is no benefit to be derived from retention of the released party in the suit.

### III. *Impact of the Comparative Negligence Act*

Next, the question of what effect, if any, the passage of Pennsylvania's Comparative Negligence Statute[11] has had upon the rule of *Davis*, supra, and its progeny, must be addressed. Preliminarily, the court notes that Federal's argument is persuasive to the extent that passage of Pennsylvania's Comparative Negligence Statute effected a clear substantive change in the law which existed at the time *Davis, Griffin* and *Mazer*, supra, were decided. If, on the other hand, passage of this Act left the law, in practical effect, as it found it, then the court would find very little need to re-examine and call into question such a useful and well reasoned line of authority. This is because, "... statutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions[.]" *Commonwealth of Pennsylvania v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976). Research has disclosed that passage of the Comparative Negligence Statute did, in fact, little more than codify the pre-existing judicially created amelioration of Pennsylvania's contributory negligence doctrine.[12]

A jury in Pennsylvania has for more than two decades[13] been competent to reject the complete defense of contributory negligence. From this evidence, it is clear that passage of the Comparative Negligence Statute effected no significant practical change in the law as it had existed for some time prior to its passage.

What adoption of Comparative Negligence in Pennsylvania did accomplish, however, was to cast the law with a recognizable bias in favor of plaintiffs whom were injured when they had been less than fifty-one percent culpable.[14] It is therefore incumbent upon the court to insure that its decision of the question before it does not

8. *Davis v. Miller*, 385 Pa. 348, 351, 123 A.2d 422, 423 (1956).

9. *Griffin v. United States*, 500 F.2d 1059, 1072 (3d Cir. 1974).

10. *Mazer v. Security Insurance Group*, 507 F.2d 1338, 1342 (3d Cir. 1975). See *Rutherford v. Gray Line, Inc.*, 615 F.2d 944, 948 (2d Cir. 1980). (Court applies and summarizes Pennsylvania law governing joint tortfeasor releases to a diversity action brought by representatives of Pennsylvania resident killed in a New York truck accident).

11. See supra at n.1.

12. In *Karcesky v. Laria*, 382 Pa. 227, 114 A.2d 150 (1955), the court denied plaintiff's request for new trial based upon inadequacy of the award, and stated:

The doctrine of comparative negligence or degrees of negligence, is not recognized by the Courts of Pennsylvania, *but as a practical matter*, they are frequently taken into consideration by a jury. The net result, as every trial judge knows, is that in a large majority of negligence cases where the evidence of negligence is not clear, or where the question of contributory negligence is not free from doubt, the jury brings in *a compromise verdict. . . .* a trial judge has the power to uphold the right of a jury to render a compromise verdict.

*Id.* at 234, 114 A.2d at 154. *See also Elza v. Chovan*, 396 Pa. 112, 115, 152 A.2d 238, 240 (1959). ("There is no magic in amounts but only in the circumstances, and compromise verdicts are both expected and allowed"); *Austin v. Harnish*, 227 Pa.Super. 199, 204, 323 A.2d 871, 874 (1974).

13. Goldstein, *The Pennsylvania Comparative Negligence Act: The Fifty-One Percent Solution*, 50 Temp. L.Q. 352, 355–56 (1977).

14. Goldstein, *supra*, note 13 at 355–56; *see generally* V. Schwartz, *Comparative Negligence* (1974).

undercut the legislature's intention to create a rule which favored plaintiffs.

Fortunately, Judge Newcomer has recently considered, albeit in a somewhat different context,[15] the probable effect upon the plaintiff's cause of action of retaining a released defendant. *Victoria Lawless v. Central Engineering Co.*, 502 F.Supp. 308 (E.D.Pa.1980). First, the court noted that such a retained defendant, one immune from liability because released, would be unlikely to incur the extra legal costs of a vigorous defense. The court then considered what effect a present, but acquiescent, defendant would have upon the jury's award to plaintiff:

> This could only result in a reduction of plaintiff's award of damages, possibly unrelated to the true proportion of liability. This thoroughly plausible result would be ironic and, this Court believes, not the result intended by the Pennsylvania Legislature.[16]

*Id.* at 311.

Furthermore, the highest court of Wisconsin, a preeminent comparative negligence state, has rejected Federal's argument. The Pennsylvania Comparative Negligence Statute is modeled after the Wisconsin Comparative Negligence Statute, Wis.Stat.Ann. § 895.045 (West Supp. 1978–1979).[17] Although such statements are not binding upon a court applying or construing Pennsylvania law,[18] nevertheless the prior pronouncements of Wisconsin's highest court are a resource which this court accords due regard.

The leading Wisconsin case is *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963). In that case, all defendants except one had settled with plaintiff and signed releases and indemnification agreements which were quite similar to the joint tortfeasor release signed by Verson and Young. In *Pierringer*, the court rejected the nonsettling defendants' claim that the settling tortfeasors would have to be parties to the suit *even if their participation were not necessary*, since the court would not have jurisdiction over them and, therefore, could not submit the issue of their negligence to the trier of fact. *Id.* at 191, 124 N.W.2d 106. It wrote:

> The issue between the plaintiff and the non-settling defendant … is the percentage of causal negligence, if any, of the non-settling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tortfeasors and of the plaintiff if contributory negligence is involved. The determination of this issue between the plaintiff and the non-settling defendant *does not require the settling defendants to remain parties* because the allocation, if any, of the causal negligence to the settling tortfeasors is merely a part of the mechanics by which the percentage of causal negligence of the non-settling tortfeasor is determined.

Id. at 191–192, 124 N.W.2d at 111–112 (emphasis supplied).[19] Next, and penultimate-

---

15. The defendant in *Lawless* asked the court to construe the Comparative Negligence Act as requiring the joinder of an *employer* in a personal injury action arising out of a work-related compensable accident. *Victoria Lawless v. Central Engineering Co.*, 502 F.Supp. 308, 309 (E.D.Pa.1980).

16. *See also Schwarzel v. Philadelphia Gas Works*, July Term, 1980, No. 4098 (C.P.Phila. Cty. Dec. 24, 1980) Forer, J., notes:

> To join a party who cannot be legally responsible all too often results in a *pro forma* appearance in which liability is not contested. Thus, the jury is misled into concluding that such party should bear the greater share of responsibility.

17. See Griffith, Hemsley and Burr, *Contribution, Indemnity Settlements and Releases: What the Pennsylvania Comparative Negligence Statute Did Not Say*, 24 Vill.L.Rev. 494, 495; 1 Pa.Leg.J. 1707 (Senate, 1976) (remarks of Senator Hager).

18. 1 Pa.Cons.Stat.Ann. § 1921(c) (1981).

19. This aspect of *Pierringer* was recently reaffirmed in *Swanigan v. State Farm Insurance Company*, 99 Wis. (2d) 179, 299 N.W.2d 234, 246–47 (1980) (Coffey, J., dissenting on other grounds). Research also discloses a Bankruptcy Court decision which held that the adoption of the Comparative Negligence Act in Pennsylvania did not require that alleged joint tortfeasors who had been released by the trustee

ly, I note that considerations of judicial economy and conservation of litigants' resources underlie Pennsylvania's long established policy in favor of private dispute resolution in the form of settlements. *Slaughter v. Pennsylvania X-Ray Corp.*, 638 F.2d 639, 643 (3d Cir. 1981); *Castillo v. Roger Construction Co.*, 560 F.2d 1146, 1152–53 (3d Cir. 1977). The court is, therefore, necessarily reluctant to return to the unmitigated rule of *Davis*, with its anti-settlement consequences [20] in the absence of authority compelling such a conclusion.

### IV. *Conclusion*

These several considerations serve to highlight the wisdom of the *Davis-Griffin-Mazer* line of authority. Further, passage of the Comparative Negligence Statute essentially effected only a nominal, not a practical change in the law which existed when those cases were first considered.[21] Finally, public policy considerations militate strongly in favor of continuance of the *Davis* rule.[22]

This completes the analysis of the relevant authorities; I cannot conclude, however, without a word about the "logic" of Federal's argument. It is simply a *non sequitur* to maintain, as Federal does, that without the presence of Verson, the factfinder cannot determine the extent of Federal's comparative negligence vis-a-vis Young. Nothing prevents Federal from introducing whatever probative evidence of Verson's culpability it may otherwise have offered with Verson present at trial.[23]

Simply put, there is no practical economic benefit that will inure to Federal from Verson's presence. The potentially dramatic effect of pointing at an acquiescent defendant is not a sufficient reason to force Ver-

son to bear the additional expense of appearing at trial after settling with plaintiff and after signing a release that provides Federal with all the economic benefits which Federal could have achieved after a trial in which Verson was present. It is clear under *Griffin* that Verson would have been relieved of attendance at trial. Nothing in Pennsylvania's Comparative Negligence Statute, public policy considerations, or logic compels a contrary conclusion.

Accordingly, Verson's motion to be relieved from attendance at trial is granted.

---

be included in the action against the remaining alleged tortfeasors in order for there to be a determination of comparative negligence. *Seneca Trails, Inc. v. Snyder*, 7 B.R. 128, 129 (Bkrtcy., W.D.Pa., 1980).

**20.** Note, Joint Tortfeasors, supra, note 5 at 314.

**21.** Supra at note 12.

**22.** Supra at notes 5, 13, and 14. "[T]he consequences of a particular interpretation must also

be considered, since it must be presumed that the legislature did not intend an absurd or unreasonable result." *Valley Forge Industries, Inc. v. Armand Construction, Inc.*, 38 Pa. Cmwlth. 603, 606, 394 A.2d 677, 678 (1978) (citing, 1 Pa.C.S. § 1922(1)).

**23.** Note, Joint Tortfeasors, supra, note 5, at 314.