**Smithgall v. PennDOT**

C.P. of Cumberland County, no. 95-2734 Civil Term.

*Robert B. Elion,* for plaintiff.
*Charles E. Wasilefski,* for defendant.

SHEELY, *P.J.,* March 1, 1996—The underlying cause of action of the case before us concerns a fatal vehicular accident which occurred on Route 81 in Carlisle, Pennsylvania. Plaintiffs are the adult children of the couple killed in the accident. They have moved for judgment on the pleadings to dismiss additional defendants Kevin L. Knowland operator of the tractor-trailer that collided into the decedents' vehicle, and Knowland's employer, J.B. Hunt Transport Inc. The basis for plaintiffs' request is a release executed between plaintiffs, and J.B. Hunt and Knowland. The release specifically acknowledges that Knowland was a joint tort-feasor whose negligence was a substantial factor in causing the deaths of plaintiffs' decedents, and that Hunt was responsible for Knowland's conduct. The Commonwealth of Pennsylvania, Department of Transportation, PennDOT, the original defendant, opposes plaintiffs' motion. We heard argument on December 6, 1995.

## FACTS AND PROCEDURAL HISTORY

On May 19, 1995, plaintiffs filed a complaint against PennDOT, alleging the wrongful death of their parents, James L. Smithgall and Shirley A. Smithgall, who were killed in a vehicular accident on Interstate 81. Plaintiffs' complaint avers the following: On October 19, 1993, at approximately 5:20 p.m., the Smithgalls were traveling north on Route 81 in Cumberland County when

they were required to stop at a construction area.[1] While the Smithgalls were waiting at the end of a traffic queue, a tractor-trailer owned by J.B. Hunt and operated by Knowland failed to stop and collided into the rear of the Smithgall vehicle.[2] James and Shirley Smithgall died as the result of the injuries they sustained in the collision.[3] Plaintiffs contend, among other things, that PennDOT did not place or require sufficient traffic control devices to warn drivers of the presence of a traffic queue at a location where traffic is expected to be traveling at least 55 miles per hour.[4] Plaintiffs maintain that PennDOT's alleged negligence was a substantial factor in causing their parents' deaths.[5]

On July 26, 1995, PennDOT filed a complaint to join J.B. Hunt and Knowland as additional defendants, claiming that J.B. Hunt was vicariously responsible for Knowland's alleged negligence in the operation of his tractor-trailer.[6] PennDOT further averred that Knowland and J.B. Hunt were to be joined in this action to protect PennDOT's right of contribution.[7] PennDOT then filed an answer and new matter to plaintiffs' complaint on August 25, 1995, denying its negligence and reasserting the negligence of Knowland and J.B. Hunt as the cause of plaintiffs' losses and injuries.[8] Furthermore, Penn-

---

1. Complaint of plaintiffs, ¶7, ¶8.
2. Complaint, ¶9, ¶10, ¶14(a)(b)(c).
3. Complaint, ¶11.
4. Complaint, ¶14(c)(d)(e).
5. Complaint, ¶15.
6. Complaint of PennDOT, ¶8, ¶14.
7. PennDOT also joined New Enterprise Stone & Lime Co. Inc., the company which had performed the construction work on 81, in order to protect its right of indemnity and contribution arising from alleged contractual obligations.
8. Answer of PennDOT, ¶15.

DOT discovered that plaintiffs settled with Knowland and Hunt[9] and alleged that an admission contained in the release[10] fully extinguishes any liability of PennDOT.[11] Plaintiffs filed a reply to PennDOT's new matter on September 12, 1995, admitting the existence of the release but denying that this admission creates sole liability in Knowland and Hunt and further denying that the admission creates an assumption of a substantial percentage of liability under the Comparative Negligence Act.[12]

On September 29, 1995, Knowland and Hunt answered PennDOT's complaint to join them as additional parties, contending that any alleged injuries suffered by plaintiffs were caused by PennDOT and additional defendant New Enterprise.[13] On October 16, 1995, plaintiffs filed a motion requesting dismissal of defendants Knowland and J.B. Hunt, or in the alternative, to relieve them of any responsibility to defend or participate in this action; Knowland and Hunt provided notice of concurrence with plaintiffs' motion. It is this motion that is before the court for disposition.

---

9. Answer of PennDOT, ¶59. The release is attached as exhibit A.

10. The relevant portion of the release states as follows:

"Release[e]s conceded in the lawsuit referred to above, and expressly acknowledge in this settlement agreement and release, that the negligence of Kevin Lee Knowland was a substantial factor in causing the deaths of plaintiffs' decedents and that releasees are liable for his conduct." Answer of PennDOT, exhibit A, hereinafter release, p. 2.

11. Answer of PennDOT, ¶62.

12. Reply of plaintiffs to new matter of PennDOT. The Comparative Negligence Act can be found at 42 Pa.C.S. §7102.

13. Answer of additional defendants Knowland and J.B. Hunt, ¶9, ¶15.

## DISCUSSION

In determining whether to grant a motion for judgment on the pleadings, a trial court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed. *McAllister v. Millville Mutual Insurance Co.,* 433 Pa. Super. 330, 334, 640 A.2d 1283, 1285 (1994). We may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. *Id.* A court should grant a motion for judgment on the pleadings where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. *Id.*

Plaintiffs contend that the release executed between themselves and additional defendants Knowland and J.B. Hunt obviates the need for the latter to participate in the trial. The release not only acknowledges that Knowland (and therefore J.B. Hunt) was a joint tortfeasor whose negligence was a substantial factor in causing the accident, but requires "a reduction in any judgment obtained by plaintiffs against PennDOT or New Enterprise by the amount of Knowland's and Hunt's percentage share of fault/liability, or their pro rata share of responsibility for any verdict or judgment if applicable under the circumstances." [14] Plaintiffs submit that the settlement agreement is a "Griffin" release stemming from the Third Circuit's decision in *Griffin v. United States,* 500 F.2d 1059 (3d Cir. 1974).

In *Griffin,* two actions were instituted in federal court regarding Mary Griffin's alleged ingestion of a live-virus

---

14. See release, p. 3.

polio vaccine. Plaintiffs' action against Charles Pfizer & Co., the manufacturer of the vaccine, settled pursuant to a release, but the other case filed against the United States government led to a verdict in favor of plaintiffs. Because the government did not join Pfizer as an additional party, the district court held that the agreement between the Griffins and Pfizer reducing any judgment rendered against other alleged joint tort-feasors by Pfizer's pro rata share was therefore invalid. The government appealed and the Third Circuit reversed, holding that although the government never joined Pfizer as an additional defendant, the Griffins had conceded the joint tort-feasor status of Pfizer by the terms of the release; the Griffins, therefore, waived the benefits provided by the holding of the Pennsylvania Supreme Court in *Davis v. Miller,* 385 Pa. 348, 123 A.2d 422 (1956) (requiring that additional defendant Miller, relieved of liability by a release, remain in the action to determine her *status as joint tort-feasor*). (emphasis added)

In the present case, the status of Knowland as joint tort-feasor is established by the release that additional defendants executed with plaintiffs.[15] Knowland and J.B. Hunt have admitted liability and that any judgment against PennDOT and/or New Enterprise will be reduced according to Knowland and J.B. Hunt's adjudged liability. The issue here is whether the additional defendants are required to participate in the action so that their share of responsibility may be determined

---

15. PennDOT contends that by acknowledging Knowland as a joint tort-feasor, the release assumes that PennDOT has been established as a joint tort-feasor by virtue of the term "joint." We do not believe that terming Knowland as a joint tort-feasor makes such an assumption but was used merely to indicate that Knowland was acknowledging fault.

by the factfinder. Although we find merit to PennDOT's contention that it will be prejudiced without the presence of Knowland and J.B. Hunt at trial, our review of the case law indicates that settling defendants are not required to participate in the action when they have conceded their status as joint tort-feasors.

Initially, we turn to *National Liberty Life Insurance v. Kling Partnership,* 350 Pa. Super. 524, 504 A.2d 1273 (1986), a case cited by both parties in support of their respective positions. In *National Liberty,* our Superior Court reversed the trial court and allowed the non-settling defendant (Bethlehem) to join nunc pro tunc an additional defendant who had settled with the plaintiff (but did not admit liability) solely to determine if Bethlehem could realize its *right* to a pro rata reduction in any judgment rendered against it. *National Liberty, supra* at 534-35, 504 A.2d at 127. (emphasis added)[16] In the instant case, PennDOT's right to a pro rata reduction is undisputed; thus, under *National Liberty,* there is no reason to require Knowland and J.B. Hunt to remain in the action.

Accordingly, when the joint tort-feasor status of the settling party is conceded in the release, a so-called "Griffin" release has been executed. The right established by the holding in *Davis, supra,* to retain a settling

---

16. The court, in footnote 6 of its opinion, stated the following regarding the definition of a "Griffin" release:

"Bethlehem argues, in the alternative, that the release given to the settling defendants is a *Griffin* release which obviates the necessity to retain the settling defendants as parties to the action but requires a pro rata reduction in any verdict rendered against Bethlehem Steel. This argument is meritless. The release given by National Liberty to the settling defendants is clearly not a *Griffin* release *as liability on the part of the settling defendants was not conceded." National Liberty, supra* at 532 n.6, 504 A.2d at 1278 n.6. (emphasis added)

defendant in order to determine whether that defendant is a tort-feasor is therefore waived when the terms of the release concede the defendant's status as joint tort-feasor. It is only in the instance where a settling defendant refuses to admit its status as joint tort-feasor that our appellate court has mandated that a settling defendant participate in the action. We note PennDOT's argument that PennDOT itself was not a party to the release and that it should not be bound by the terms of the release. PennDOT, then, wishes not to be bound by a release in which the settling defendants concede liability because such an admission keeps Knowland and J.B. Hunt out of the action. Whether or not PennDOT was a party to the release or not, Knowland and J.B. Hunt *have* conceded liability. We find no case law that requires a defendant to participate in the action after settling in order to determine its percentage of liability.

Retaining a settling defendant in the trial solely for the purpose of allocating liability has been barred by federal case law. In *Young v. Verson Allsteel Press Co.,* 524 F. Supp. 1147 (E.D. Pa. 1981) the court succinctly stated:

"It is simply a non sequitur to maintain, as Federal does, that without the presence of Verson, the factfinder cannot determine the extent of Federal's comparative negligence vis-a-vis Young. Nothing prevents Federal from introducing whatever probative evidence of Verson's culpability it may otherwise have offered with Verson present at trial.

"Simply put, there is no practical economic benefit that will inure to Federal from Verson's presence. The potentially dramatic effect of pointing at an acquiescent defendant is not a sufficient reason to force Verson to bear the additional defense of appearing at trial after settling with plaintiff and after signing a release that

provides Federal with all the economic benefits which Federal could have achieved after a trial in which Verson was present. It is clear under *Griffin* that Verson would have been relieved of attendance at trial. Nothing in Pennsylvania's Comparative Negligence Statute, public policy considerations, or logic compels a contrary conclusion." *Id.* at 1152.

Partly in reliance on *Young,* our Superior Court has stated the following, although in a different setting, which appears to disapprove of requiring the presence of a settling defendant at trial solely for the purpose of determining its share of liability: "to find that appellees' presence at trial is necessary . . . to determine the damages appellants may be obliged to pay, would . . . deter settlement of actions and waste judicial resources . . . ." *Harka v. Nabati,* 337 Pa. Super. 617, 625, 487 A.2d 432, 436 (1985).

Moreover, our Supreme Court in *Charles v. Giant Eagle Markets,* 513 Pa. 474, 522 A.2d 1 (1987) not only strongly encouraged the promotion of settlements but stated that "[t]he inducements for a defendant to settle are the certainty of the agreed-upon obligation and the avoidance of the vagaries of trial." *Id.* at 477, 522 A.2d at 2.

In conclusion, it appears that our courts wish to encourage settlement agreements by protecting from further litigation settling defendants who admit to being joint tort-feasors. We do recognize that although the jury may find little or no fault attributed to PennDOT without the presence of the additional defendants, PennDOT has a valid interest in having Knowland and J.B. Hunt present so that the factfinder will not be inclined to attribute fault to PennDOT merely because of its presence at trial. Nonetheless, the foregoing dis-

cussion reflects that Knowland and J.B. Hunt are not required to participate in the trial.

## ORDER

And now, March 1, 1996, plaintiffs' motion to dismiss is granted to the extent that additional defendants Kevin Lee Knowland and J.B. Hunt Transport Inc. shall not be required to participate or defend in the above captioned case. However, they shall remain named as parties to the action.